(No. 21931.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN DAVIES, Plaintiff in Error.

*Opinion filed October 21, 1933—Rehearing denied Dec. 13, 1933.*

FARTHING and SHAW, JJ., dissenting.

WM. SCOTT STEWART, for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURT-NEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, GRENVILLE BEARDSLEY, and J. ALBERT WOLL, of counsel,) for the People.

Mr. JUSTICE HERRICK delivered the opinion of the court:

John Davies, the plaintiff in error, (hereinafter referred to as the defendant,) was tried before a judge of the municipal court of Chicago without the intervention of a jury,

on an information filed against him in that court charging him with the violation of section 2-A of an act revising the law relating to deadly weapons. (Smith's Stat. 1933, chap. 38, p. 1021; Cahill's Stat. 1933, chap. 38, par. 141, p. 1003.) He was found guilty and was sentenced to imprisonment in the house of correction for one year and to pay a fine of $100 and costs. From the judgment of conviction he in the first instance sued out a writ of error from this court to review that judgment. This court held that upon the record filed here no constitutional question or the validity of the statute had been raised in the lower court, and therefore neither question could be reviewed in this court. The cause was ordered transferred to the Appellate Court for the First District. (*People* v. *Davies,* 350 Ill. 48.) The Appellate Court on the hearing of the case in that court affirmed the judgment of conviction. The case is now brought to this court on writ of error sued out to review the judgment of the Appellate Court.

Counsel appearing for the defendant when the case was in this court at the time of the former decision, and in the Appellate Court, were different attorneys from the attorney now representing the defendant in this court.

A great portion of the defendant's brief in this cause is devoted to the argument that the statute in question violates section 13 of article 4 of the constitution of this State, and also that the statute is invalid. The court held in *People* v. *Davies, supra,* that neither one of these questions was properly raised upon the record in this court, and that this court was without jurisdiction to pass upon the cause on writ of error sued out directly from this court to the municipal court. So far as that decision is applicable the judgment is now conclusive upon the parties.

Upon motion made and allowed, the People have filed a certified copy in this proceeding of the defendant's brief and argument and abstract of record filed in this same case in the Appellate Court.

The only errors assigned in the Appellate Court on the record were as follows: (1) Section 2-A, (Laws of 1931, p. 449,) under which this prosecution is brought, is unconstitutional; (2) the finding of the court in this case is not responsive to the information, and the judgment of the court is void for uncertainty; (3) the forcible entry into the home of the defendant by the police without due warrant of law, the search of his home by the officers, the seizure of the pistol by the officers and the offering of the same in evidence over a sufficient petition to suppress such evidence duly presented to the court, are violations of sections 2, 6 and 10 of article 2 of the constitution of this State; and (4) the trial judge committed reversible error in overruling the motion of the defendant to suppress evidence illegally obtained.

As we view the record, the only questions presented that are open for the consideration of this court upon this record are whether or not the municipal court erred in overruling the motion of the defendant, made in that court prior to the trial of the case upon its merits, to suppress the evidence obtained in the alleged search of the defendant's home, the ruling admitting the revolver in evidence, whether there is any reasonable doubt of the defendant's guilt, and whether the punishment pronounced against the defendant is excessive.

The evidence obtained at the defendant's home was a 45-caliber Colt automatic pistol from which the manufacturer's number had been removed. The evidence showed that about ten o'clock on the morning of January 16, 1932, Michael P. Naughton, a Chicago police sergeant, together with another police officer, called at the defendant's home for the purpose of talking with him about another case in which the defendant was supposed to be involved. Neither officer at that time had any warrant for the defendant and did not go there for the purpose of arresting him or anyone else at that location. The defendant lived on the sec-

ond floor of the building. The officers went to the rear door of the second floor and Sergeant Naughton rang the door bell. The wife of the defendant came to the door. The police sergeant had a conversation with her. Immediately adjacent to the door of the defendant's home there was a window. While the officers were standing on the rear porch of the defendant's home they saw through the window the defendant standing close to the window with an automatic pistol in his hand. He placed the pistol against the window, pointed the same towards the officers, cursed them, and threatened to shoot them if they did not get off the porch. Naughton said to the defendant, "We are police officers," to which statement he replied, "I don't give a damn who you are; get down off that porch, you dirty bastards." Naughton then said to the defendant, "Put down that gun; you are arrested," and further said, "Open the door." The defendant replied that he would not, and, cocking his revolver, said to the officers, "Are you going to get off now?" Naughton then took his police star off his vest, walked to the window, held his star against the window, told the defendant he was under arrest and asked him to open the door. He refused to open the door. Naughton then told him that he was going to get a squad and take him into custody. Naughton left and came back in about ten minutes with two uniformed police officers. He rapped on the door and was admitted. When he went in he found the defendant in the kitchen but without a pistol. Naughton said to him, "You are under arrest; where is the pistol you had?" to which the defendant replied, "I will give you $25; forget about the pistol." Naughton replied, "You are talking to the wrong copper; you will kill a copper yet, and I will have no copper's blood on my hands." The defendant then told his wife to get the gun. His sister gave Naughton the gun. Naughton asked him if this was the same pistol he had had, and he stated that it was. At the time the gun was handed to the officer the

pistol was loaded and cocked. Naughton further testified, without any objection being made to the evidence, that the defendant was in an automobile which was chased by a couple of police officers about three or four weeks before January 16, and that the parties in the car and the officers were shooting back and forth at one another; that the car turned into an alley, and a pistol was found in the car with three exploded cartridges from it. Officer Payton, who was with Naughton at the defendant's home, testified to substantially the same matters that occurred at the defendant's home as related by Naughton.

The defendant testified in his own behalf. He stated that on January 16 he was in bed at the time the officers came to the house; that his wife got up when the bell rang and came running back to the room where he was and said, "There are two funny-looking men at the door; I don't know who they are; I am afraid; I don't want to let them in." He further stated that he then came out, and that he saw officer Naughton standing a little way from the door with his hand in his pocket, and that he (the defendant) asked the officer, "What do you want?" and that the officer replied that he wanted to talk to him. The defendant further stated that he had been held up on a former occasion; that he had the gun in his hand because he thought the officers were stick-up men and for that reason he told them to get away from the door; that the officer did come to the window and show him a police sergeant's star; that he (the defendant) believed the star was a fake star; that the officer said he would call a squad, and that he said to the officer, "You call a squad and then I will believe you are officers;" that when Naughton returned with the two policemen and entered the house the officer said to him, "You think you are smart," to which he replied, "No, but I didn't take you for an officer;" that the officer asked where the gun was, to which the defendant replied that he did not think he would give him the

gun because they did not have any warrant; that the policeman said, "What is the use of acting like that;" that the defendant said that he was helpless; that he then told his wife to show the officer where the gun was, and the officer then got the gun, which was in the bed-room. The defendant on cross-examination admitted that after he had been taken into custody and was questioned about the affair at the house he did continue to wave the pistol at the officers after he had been told by them that they were officers. He further stated that at the time he was held up, the parties holding him up posed as police officers. He testified that he had purchased the revolver in question from a man named Jack Stock about six or seven months before; that he bought the pistol on the corner of Roby and North streets; that he paid $12.50 or $15 for the pistol; that Stock had asked him if he wanted to buy a gun and that he had said yes; that he did not know where Stock was now or what his business was. The defendant denied that he had ever made any changes or alterations on the pistol since he had purchased it; that on the occasion when the officers were in the house and asked for the pistol they told him if he did not give it up they would scout the house and find it.

Estelle Anderson, sister of the defendant, testified, in substance, that she answered the door when the officers came; that she told the defendant that there were two men at the door who did not look right to her; that he got up, took the gun with him and ordered the policemen off the premises; that Sergeant Naughton removed his star and showed it to the defendant and told him that he would get a squad. When the police came the gun was taken from under her pillow in her room by the officers, and that the defendant had brought the gun to her room after he had left the window.

On the motion being made to suppress, the court took the motion with the understanding that it would be passed on during the course of the trial. The trial court refused

to suppress the evidence and admitted the pistol in question in evidence.

It is contended by the defendant's counsel that there was an unlawful entry into the home of the defendant and an unlawful search and seizure of the gun in question, all being in violation of the constitutional rights of the defendant. The guaranty made by the constitution of this State that all persons shall be safe in their homes and not subject to unreasonable search and seizure does not grant immunity from a search and seizure upon a lawful arrest. Where a crime has, in fact, been committed and an arrest is made by an officer who has reasonable grounds for believing the person arrested is implicated in the crime, such officer has a right to search the person arrested without a search warrant. In such case the right of search and seizure is incidental to the arrest. *People* v. *Kissane,* 347 Ill. 385; *Lynn* v. *People,* 170 id. 527; *People* v. *McGurn,* 341 id. 632; *People* v. *Caruso,* 339 id. 258; *People* v. *Swift,* 319 id. 359.

It is provided by section 2, division 6, of the Criminal Code, (Smith's Stat. 1933, p. 1094,) as follows: "It shall be the duty of every sheriff, coroner, constable and every marshal, policeman, or other officer of any incorporated city, town or village, having the power of a sheriff or constable, when any criminal offense or breach of the peace is committed or attempted in his presence, forthwith to apprehend the offender and bring him before some justice of the peace, to be dealt with according to law; to suppress all riots and unlawful assemblies, and to keep the peace, and without delay to serve and execute all warrants, writs, precepts and other process to him lawfully directed." It is further provided by section 4 of the same division: "An arrest may be made by an officer or by a private person without warrant, for a criminal offense committed or attempted in his presence, and by an officer, when a criminal offense has in fact been committed, and he has reasonable

ground for believing that the person to be arrested has committed it."

The term "criminal offense," as used in our statute, includes misdemeanors as well as felonies. (*People* v. *Scalisi,* 324 Ill. 131; *People* v. *McGurn, supra; People* v. *Osborne,* 278 Ill. 104.) An officer has the right to arrest without a warrant where he has reasonable grounds to believe that the person arrested is guilty of a crime, where, in fact, a crime has been committed. (*People* v. *Swift, supra.*) However, in making an arrest without a warrant the officer making such arrest must have a well-grounded belief that the person arrested is guilty of the commission of a crime. His belief must be such as would lead a prudent and cautious man acting under like circumstances to the same belief. Mere suspicion is not sufficient to justify an arrest. Whether or not the officer making the arrest in a given case had reasonable grounds for making the arrest is always a mixed question of law and fact. The facts are determined by the circumstances in evidence as to whether or not the grounds on which the officer acted were reasonable. The law is determined by the sufficiency of such facts. No unyielding rule applicable to every case can be laid down. The rights of the citizen must always be earnestly, unhesitatingly and fully guarded against unlawful search and seizure by imprudent or over-zealous officers, otherwise the constitutional guaranty against unreasonable and unlawful searches and seizures would be nullified and no security would be afforded the private citizen by either the constitution or the courts. Each case must be considered and decided upon the facts as disclosed by the evidence in the particular case. By the aiming of the loaded, cocked pistol at the officers, threatening to shoot them and calling them the vile name he did, the defendant was then and there guilty of an assault upon the officers, in violation of the Criminal Code of this State, as well as displaying a pistol in violation of section 56 of the Crimi-

nal Code. (Smith's Stat. 1933, chap. 38, pars. 20, 56, pp. 1007, 1022; Cahill's Stat. 1933, pp. 991, 1004.) In entering the home of the defendant and searching him and the premises without a search warrant the officers were not acting without authority. A criminal offense had been committed in the presence of the officers, and they had the lawful right to take possession of the deadly weapon with which the defendant had threatened to take their lives. (*People* v. *Kissane, supra; People* v. *Caruso, supra; People* v. *Swift, supra; Lynn* v. *People, supra.*) The court, therefore, did not err in refusing to grant the motion made by the defendant to suppress the evidence. It necessarily follows that the automatic pistol in question was properly received in evidence.

It is earnestly insisted that the guilt of the defendant was not proved beyond a reasonable doubt. No assignment of error was made in the Appellate Court that the guilt of the defendant had not been proved by the evidence. In fact, no question was raised in that court as to the sufficiency of the evidence to justify the conviction of the defendant in the event that the motion to suppress the evidence was properly decided in the court below. The general rule is that this court will not disturb the findings of the trial court as to the sufficiency of the evidence to support the finding and judgment of the *nisi prius* court. The weight to be given to the testimony of the witnesses and the credibility to be given the testimony of each witness is the function of the trial court. A reviewing court is very loath to exercise that function. It will only do so when it clearly appears from the evidence that the guilt of the defendant is not established beyond a reasonable doubt. (*People* v. *Stilson*, 342 Ill. 158; *People* v. *Thompson*, 321 id. 594; *People* v. *Reed*, 287 id. 606; *Schroeder* v. *People*, 196 id. 211.) The rule, however, that the alleged errors of the trial court not argued or called to the attention of the Appellate Court will be held to have been

waived and cannot be raised for the first time in this court is not an unbending rule. If this court can see that grave injustice has been done by the conviction of the defendant it will review the evidence.

Yielding to the insistance of the defendant that his guilt was not proved beyond a reasonable doubt and that this court review the record for the purpose of passing upon this claim, we have not only read the abstracts of record filed in this court and in the Appellate Court but have read the complete record. We have heretofore in this opinion given a resumé of the material parts of the evidence heard by the trial court. While the evidence is conflicting in many material respects, we cannot say that the judgment of the trial court is not sustained by the evidence or that it is manifestly against the weight of the evidence. We are not able to say from our review of the evidence that there is a reasonable doubt of the defendant's guilt. Unless we are able to say that the judgment of the court is palpably erroneous the judgment of the trial court will not be disturbed. The trial court had the opportunity of seeing the witnesses and hearing them testify. To the trial judge there was afforded the opportunity of observing the conduct and demeanor of the witnesses while testifying and whether they appeared biased or prejudiced in their testimony. These factors enter into the determination as to what amount of credit will be given the testimony of a witness. The trial judge is in a much better position than a reviewing court to decide and pass upon those important elements. The trial judge heard the defendant's testimony and saw him give his evidence. It is for the trial court to determine whether or not the testimony of the defendant was worthy of belief. The defendant did not deny his attempt to bribe the officers. His story about the purchase of the pistol from a man whose business was unknown, standing on a street corner, and whose whereabouts were not known at the time of the trial, doubtless was considered by the trial

judge in weighing the evidence of the defendant. The trial judge also had the opportunity to observe the pistol, the appearance thereof, the place where the number had been removed, and to see whether such grinding away of the numbers was apparently of recent origin. We are of the opinion that there is sufficient evidence in the record to uphold the judgment of conviction of the defendant.

It is strenuously urged that the punishment inflicted upon the defendant is excessive. The law under which the defendant was convicted was passed for the purpose of suppressing the removal of the manufacturer's numbers upon weapons of the character of the one here involved. A legitimate dealer in weapons is required to keep a register thereof. By means of this register the name of the purchaser of the weapon may be determined, thus in many cases affording a valuable clue to the detection of the person guilty of the violation of the criminal law. An automatic pistol is a potential messenger of death. The legislature, in the interest of the protection of society, has enacted a law covering the sale and distribution of pistols and revolvers. It is common knowledge that by means of the science of ballistics it may be often determined that a particular bullet was shot from a certain pistol or revolver. By means of the registration of weapons it is often possible to determine the owner of such pistol or revolver, but if the manufacturer's number has been removed and the identification mark destroyed, the determination of the ownership of the weapon is in many cases defeated. A person buying a weapon whose manufacturer's number has been removed could readily determine that fact. The evidence in the case at bar showed that the manufacturer's number had been on the weapon at a place where the number could have been readily seen if it had not been obliterated. The enforcement of this law is important to the welfare of society. The legislative act pertaining to fire-

arms permits a citizen to keep in his home or place of business any fire-arm reasonably necessary for the protection thereof. Law-abiding citizens are permitted by virtue of this act to have possession of fire-arms in their homes and places of business, but it is not unreasonable to require of a citizen that he shall not remove the manufacturer's number from any such weapon so in his possession. The amount of punishment provided by the judgment of conviction was within the limit provided by the statute applicable thereto.

We find no reversible error in the record, so far as we are by law permitted to review the same, and the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

Mr. JUSTICE FARTHING, dissenting:

I cannot agree with the conclusions reached in the decision in this case. In order to find the defendant guilty a resort was had to evidence obtained through a disregard of the constitutional guaranties which ought to be preserved to the guilty as well as the innocent. The motion to suppress should have been sustained because Davies was not charged with a crime. The police officers did not suspect him of a crime, they had no reasonable grounds to suspect him of any crime, and they had no right on the premises after they were told to leave. The law gave Davies a right to have a gun in his home. Even if the officers had been in uniform he would have had the right to resist their entering his home just the same as he would have had a right to resist any other traspasser, and to have gone to further lengths to prevent their entry where they had no warrant for his arrest. The fact that he called them vile names and refused to believe that they were officers had nothing to do with the case. These officers acquired no greater rights through persisting in their efforts to gain admittance to Davies' home, and what he did would not constitute either an assault or breach of the statute

against the flourishing of a gun, regardless of his character, reputation and bad language.

The cases relied upon by the majority of this court are not authority for this case, because in them a crime either had been committed in the officers' presence or out of their presence but with reasonable ground on their part to believe that the defendant was guilty. In none of the cases was the crime, if any was committed, caused by the officers' attempt to make an unlawful entry of a habitation.

In *People* v. *Kissane,* 347 Ill. 385, the defendant was suspected of having committed a previous bank robbery, and the officer's ground of belief that the defendant had committed it was held reasonable. The same is true of *People* v. *Swift,* 319 Ill. 359. In *People* v. *McGurn,* 341 Ill. 632, the defendant's conviction for carrying concealed weapons was reversed because the gun was discovered by means of an unlawful search. The defendant was not reasonably suspected of having committed a crime previous to the search. The fact that he was committing the crime of carrying a concealed weapon when he was searched was not sufficient to justify the unlawful search. In *People* v. *Caruso,* 339 Ill. 258, the officer saw the defendant picking pockets and arrested him. Thus the crime was not provoked by the officer but the case was one where a crime was committed in his presence and the arrest was justified. In *Lynn* v. *People,* 170 Ill. 527, also relied upon by the majority, the officer went to quell a disturbance and shot in self-defense the man causing the disorder. He was held justified. That was a case where the crime had been committed without the provocation of the officer.

It is therefore my opinion that the motion to suppress should have been allowed and the judgment reversed.

Mr. JUSTICE SHAW concurs in the above dissenting opinion.