[Crim. No. 7669.   Second Dist., Div. Two.   Dec. 29, 1961.]

THE PEOPLE, Plaintiff and Respondent, v. RAYMOND ROSS, Defendant and Appellant.

Cary G. Branch, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Herbert Davis, Deputy Attorney General, for Plaintiff and Respondent.

ASHBURN, J.—Convicted by a jury upon four counts of forgery (Pen. Code, § 470), with a prior conviction of robbery admitted, defendant Raymond Ross appeals from the judgment and from an order denying his motion for new trial. Appellant contends that the trial court erred in (1) receiving into evidence four checks claimed to have been forged and dated September and October 1958 (two years before the ones mentioned in the information); also (2) in permitting testimony relating to such checks; and (3) in instructing the jury.

The four counts involve, respectively, the following checks: (1) $37.60 dated July 7, 1960; (2) $42.80 dated July 8, 1960; (3) $57.50 dated July 12, 1960; and (4) $62.37 dated July 12, 1960. All were drawn on the Security-First National Bank, Sixth and Central Branch, payable to the defendant, Raymond Ross, and purportedly signed by one W. S. Goodwin or H. S. Goodwin as maker. Each was endorsed and cashed by defendant at the market of Lillian Y. Kuwata on or about the date of the check. The checks were not honored, and the books and records of said bank, examined for the period January 1 to November 30, 1960, disclosed no account in the name of W. S. Goodwin, H. S. Goodwin, or in the name of Raymond Ross. The four checks were received in evidence.

Police Officer H. B. Mott of the Forgery Division was then questioned with regard to a conversation he had with defendant on November 21, 1960, at the Police Administration Building during his investigation of this case. He testified that defendant was shown and admitted having endorsed and passed each of the four checks of the charge but denied having written on the face of any of them. "He stated that he had cashed those checks in a market down near where he used to live. We asked him where he obtained the checks, and he stated that he met a man by the name of Goodwin on the street, he thought down on East Fifth Street. He stated that he helped this man haul rubbish and these checks were given to him as payroll checks." Officer Mott continued: "Also he stated that he had written the checks [of 1958] that we dis-

played to him. We asked the defendant if he wouldn't write his name. He stated, no, that he has forgotten how to write. . . . Q. When you say you showed him something that you had on a yellow piece of paper, was that writing that you had obtained from him on some previous occasion? A. Yes, sir. Q. In discussing this writing on the yellow piece of paper, did he acknowledge that he had written it, or he hadn't? A. He acknowledged that he had written the handwriting that was on this yellow sheet of paper, yes, sir. Q. And did you ask him why he couldn't write something now, then? A. Yes, we did. . . . He stated that he had forgotten how to write.'' Upon completion of the cross-examination of this witness the People rested their case. The yellow piece of paper and the checks referred to in connection therewith were not further identified or produced by the People in their main case.

Defendant testified and admitted endorsing and cashing the four checks which are the subject of this prosecution. He denied having written any part of the face of these checks, said he did not know anything was wrong with them and he did not have any intent to defraud Mrs. Kuwata. He denied having told the officers he was unable or had forgotten how to write. He was not questioned upon direct examination concerning the 1958 checks or yellow paper. During the cross-examination of defendant the district attorney sought to question him concerning those checks. An objection being made ''on the ground it is immaterial, incompetent, irrelevant, and has no tendency to prove or disprove any issue in this case,'' the prosecution offered to prove that these four checks were forgeries which defendant presented and cashed, and submitted that they would ''go to show common plan, design, scheme, and, thus intent.'' The following evidence was received over the continuing objection of defense counsel on the above-stated grounds. Defendant was shown the 1958 checks (hereinafter referred to as checks Nos. 5, 6, 7 and 8). When shown check No. 5, he was asked: ''Q. And this check was a forged check, wasn't it? A. I do not know about no forged check. . . . Q. Isn't it a fact that you told the officer, Officer Mott, that you had forged the face of this check and presented it for payment? . . . A. No sir.'' Defendant admitted having endorsed and cashed checks Nos. 5, 7 and 8 which were dated September 10, October 10, and October 10, 1958, in the amounts of $18.95, $21.12 and $19.14, respectively. They were signed by ''R. E. Ressel'' as maker against the

account of "Standard Mfg. Co., 2235 East 38th Street, Los Angeles, 58" and drawn on the First National Bank of Vernon, California. Each bore the endorsement of Raymond Ross and that of Chuck's Cafe. Defendant stated that these three checks were given to him by the Standard Manufacturing Company where he had worked. He denied any knowledge of check No. 6 which was made payable to a different payee and bears the endorsement of that payee and Chuck's Cafe. It is also a Standard Manufacturing Company check, signed by R. E. Ressel, dated October 10, 1958, in the amount of $17.40. Defendant was also shown the yellow piece of paper and admitted that the handwriting thereon was his. These four checks and the yellow paper were marked for identification at this time. On redirect, defendant testified that check No. 5 was not a forgery.

After the commencement of rebuttal testimony, an additional objection was made by defense counsel to the line of evidence respecting the 1958 checks on the ground that such evidence was too remote in time to have any materiality; and further objected to the presentment of this evidence upon rebuttal. The prosecution offered to withdraw all evidence with regard to the 1958 checks and the yellow piece of paper and have the court instruct the jury to disregard it. The court overruled the objection, stating that "I don't think instruction is going to cure the matter now"; that the question of remoteness goes only to the weight of the evidence; and "As to whether or not there was a specific intent to defraud, whether the person acted in good faith, whether he knew the mode of possible passing checks in this matter, and whether there was a common scheme and plan, for that reason the objection is overruled." The record shows a continuing objection to all of this evidence upon all aforesaid grounds.

Officer Mott, recalled on rebuttal, identified checks 5, 6, 7 and 8; testified that on November 21, 1960, he had a conversation with defendant in which defendant stated that he wrote and passed these checks. He further testified that he recalled a conversation with defendant in 1958 and "at that time he stated he endorsed and passed the checks." This evidence was received "only for the purpose . . . if it be such, on the basis of a prior inconsistent statement," over objection on the additional ground that the admission was hearsay, "since obviously there has been no corpus of any

other offense established up to this time." Checks 5, 6, 7 and 8 were then offered and received in evidence.

Upon surrebuttal defendant testified that in November 1960 when he was asked by the officers to write on a piece of paper, "I told him, I say I couldn't write so good, I can sign my name and print it for you. He say, well, do that; and that's what I did." (The yellow paper bears out this statement.)

Appellant contends (a) that it was error for the trial court to permit the prosecution to show to defendant, mark for identification, and cross-examine him about the 1958 checks; (b) that the court erroneously permitted Officer Mott to testify on rebuttal concerning the 1958 checks; and (c) they were improperly received in evidence.

We find that these checks should have been rejected for the basic reason that there was no showing that they were in fact forgeries. Defendant's statement to Officer Mott that he wrote, endorsed and cashed them, though independent evidence of the facts so stated (except as proof of corpus delicti), did not spell forgery for there was nothing said to the effect that defendant wrote them without authority or that he signed the name of R. E. Ressel which appeared on the face of each. The checks themselves do not appear to the eye of one who is not an expert to have signature and endorsement in the same handwriting. The proof of want of authority to write the checks was essential to proof of a forgery. Moreover, there was no evidence that any of these 1958 checks was dishonored.

"The crime of forgery consists either in the false making or alteration of a document without authority or the uttering (making use) of such a document with the intent to defraud. (§ 470, Pen. Code.)" (*People* v. *McKenna,* 11 Cal.2d 327, 332 [79 P.2d 1065].) ▮ As stated in *People* v. *Morgan,* 140 Cal.App.2d 796, 800 [296 P.2d 75], the "crime is committed when one makes or passes a false instrument with intent to defraud." ▮ It was therefore necessary for the People to prove either that defendant signed the checks without authority, or that he passed them knowing they were forgeries, with intent to defraud. Evidence of similar acts or transactions may tend to prove these issues. (*People* v. *Cowen,* 41 Cal.App.2d 824, 827 [107 P.2d 659] ; *People* v. *McWilliams,* 117 Cal.App.732, 736 [4 P.2d 601] ; *People* v. *Pearson,* 151 Cal.App.2d 583, 585 [311 P.2d 927] ; *People* v. *Lucas,* 67 Cal. App. 452, 455 [227 P. 709].)

*People* v. *Whiteman,* 114 Cal. 338, 344 [46 P. 99]: "To prove that an accused person signed the name of another to an instrument, and that he passed such instrument as genuine, does not prove the commission of a crime. It must still be shown that it was a false instrument, and this is not proven until it is shown that the person who signed another's name did so without authority. Until this proof is made it is not shown to be a false instrument, and the defendant is not put to his proof at all. The defendant when on the stand admitted that he drew two of the four checks which were produced at the trial, and that he negotiated them. He claimed, however, that he had authority from the drawers to so use their names. Waiving the necessity of corroborating evidence as to the *corpus delicti,* would anyone contend that this proved forgery? Suppose that he had admitted that he drew the Dixon check, and claimed that he had authority from Dixon to draw it, would this admission have put the burden upon him to show such authority? It would be a new departure in criminal law." When in a forgery case it is sought to show guilty knowledge of the forged character of the instrument involved in the charge by proof that the defendant passed other similar instruments, the evidence is not admissible unless it is also shown that such other instruments were also forgeries. This must be shown by evidence *aliunde* the admissions of the defendant. At page 343: "When the fact of guilty knowledge becomes material it must appear that the check described in the indictment was itself a forgery. Proof that defendant passed other checks which were forged cannot be introduced, when unaccompanied with other inculpating facts, to establish the *corpus delicti.* And, when the body of the offense has been established, and that defendant passed the check, and it is sought to show guilty knowledge by the fact that defendant also passed other forged paper, the prosecution assumes the same burden as to all the other checks introduced. It must show that such checks were forged." To the same effect are *People* v. *Baird,* 105 Cal. 126, 129 [38 P. 633]; *People* v. *Bird,* 124 Cal. 32, 34 [56 P. 639]; Fricke, California Criminal Evidence (5th ed.), page 285. See also *People* v. *Byrnes,* 27 Cal. App. 79, 84 [148 P. 944]; *People* v. *Albertson,* 23 Cal.2d 550, 578-579 [145 P.2d 7].

The error in receiving these checks in evidence leaves the case without any competent proof of the crime charged—without any showing of corpus delicti. Defendant never told any officer that he wrote the face of any of the

checks of the information (Exhibits 1, 2, 3, 4), merely that he endorsed and cashed them and that he thought they were alright.

The only peg upon which to hang any claim of proof to the contrary is the development of a few suspicious circumstances in defendant's cross-examination and contradiction of his testimony upon certain other points such as his ability or lack of ability to write. But the inferences arising from such weaknesses in defendant's story could go only to discrediting his testimony. If that be disbelieved and hence rejected by the triers of facts, nothing is left upon which a conviction can be based. ▪▪▪ Disbelief and rejection of defendant's testimony do not create affirmative proof to the contrary. ▪▪▪ The People failed to prove that defendant forged these checks or knew them to be forged, and his failure to testify credibly cannot operate to fill the hiatus in the state's case. *People* v. *Draper*, 69 Cal.App.2d 781, 785 [160 P.2d 80]: "It is very evident that none of the three defendants were entirely truthful when testifying in their own behalf. While this may have furnished sufficient reason for the jurors refusing to believe the testimony of any defendant, it did not relieve the People from the obligation of proving Draper guilty. A defendant, no matter how untrustworthy he may be, is not required to prove his innocence. The People must prove him guilty. With these observations we must proceed to consider the sufficiency of the evidence against Draper." *People* v. *Tabizon*, 166 Cal. App.2d 271, 274 [332 P.2d 697]: "The likelihood that the court may have disbelieved his [defendant's] testimony cannot be held to sustain the conviction upon a theory that his lack of credibility supplied the deficiencies in the People's case." *People* v. *Mayo*, 194 Cal.App.2d 527, 534 [15 Cal. Rptr. 366]: "This falsehood practiced by Mayo when he came to the police headquarters with dirt on his face and torn shirt, was, of course, reprehensible and might well have bolstered and corroborated affirmative proof of guilt. . . . While it is true that a wilful falsehood by the defendant on a matter materially connected with the offense charged may produce a strong suspicion of guilt or, under some circumstances, even an admission of guilt (*People* v. *Osslo*, 50 Cal.2d 75, 93 [4] [323 P.2d 397]), it cannot be used to supplant or take the place of an entire lack of evidence on an essential ingredient of the corpus delicti." *Estate of Bould*, 135 Cal. App.2d 260, 265 [287 P.2d 8, 289 P.2d 15]: "The fact that one testifies falsely may, and usually does, afford an inference

that he or she is concealing the truth but it does not reveal the truth itself or warrant an inference that the truth is the direct converse of the rejected testimony." The crime charged in this case has not been proved and hence there has been a miscarriage of justice.

The fact that counsel has not presented the specific point upon which this decision turns cannot deter us from seeing that justice is done. In *People* v. *Ford,* 89 Cal.App.2d 467, 471 [200 P.2d 867], it is said: "Although the briefs filed by the present counsel of appellant, who did not represent him at the trial, do not raise the question of misconduct, we cannot ignore it. The mere oversight of the attorney for an accused to present a serious claim of error which is justified by the record furnishes no excuse for the perpetuation by the reviewing court of an obvious injustice. Its duty to see that the substantial rights of the accused are protected may not be thus circumscribed." ▮ *People* v. *Davies,* 354 Ill. 168 [188 N.E. 337, 340]: "The rule, however, that the alleged errors of the trial court not argued or called to the attention of the Appellate Court will be held to have been waived and cannot be raised for the first time in this court is not an unbending rule. If this court can see that grave injustice has been done by the conviction of the defendant, it will review the evidence."

*People* v. *Baldwin,* 278 Ill. App. 327, 333: "While, generally, a reviewing court will only consider alleged errors argued or brought to the attention of the court, the rule is not inflexible; and where it is apparent that its application will result in injustice, it will not be blindly followed." (See also 4 Cal.Jur.2d, § 483, p. 317; 24 C.J.S. § 1846, p. 704.) This is but an application of the rule frequently applied on the civil side. See *Burns* v. *Ross,* 190 Cal. 269, 276 [212 P. 17].

Judgment and order reversed.

Fox, P. J., and Herndon, J., concurred.