[Crim. No. 5480. Third Dist. May 13, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
SAMMY JOE LONG, Defendant and Appellant.

## COUNSEL

Lloyd H. Riley, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Arnold O. Overoye and Loren E. McMaster, Deputy Attorneys General, for Plaintiff and Appellant.

OPINION

FRIEDMAN, J.—A jury found defendant guilty of passing a $45 forged check. He appeals from the judgment. He assigns error in the admission in evidence of three forged checks other than that on which the accusation was based.

The $45 check was presented to and cashed by Victor Kauck, a store owner, in August 1968. The maker was fictitious, or at least had no account at the drawee bank. Jerry Willoughby was payee. At the trial Kauck identified defendant as the person who had, in his presence, indorsed the check with Willoughby's name and had followed the indorsement with a fictitious address and telephone number.

When the check was returned unpaid, Kauck first went to Willoughby, then to the police. In August or September 1968 the police showed Kauck some photographs but no identification resulted. In April 1969 he was shown some additional photographs. Although defendant's picture was included in this second group, he was unable to identify the check passer. Later, when Kauck was shown a single photograph of defendant, he identified him as the check passer.

Willoughby's sister is married to defendant's brother. Willoughby testified that the indorsement on the check was not his. A handwriting expert testified. He was unable to state that the indorsement was written by defendant, but did detect possible similarities.

Defendant took the stand for the sole purpose of denying that he signed the indorsement. On cross-examination the prosecutor was permitted (over objection) to question him regarding three other checks payable to Jerry Willoughby. The three checks bore the purported signature of Lonnie Long, defendant's brother. One check for $123 was dated February 4, 1969; one for $123 and another for $146 were dated February 13, 1969. In his cross-examination, defendant first denied that he had seen these checks, then admitted that he was present in late February or early March 1969 when Steve Newman wrote them. The three checks were then admitted in evidence. The prosecutor asked the court to take judicial notice of a juvenile court file in which Newman had admitted forging the three checks. He also requested the court to take judicial notice of a justice court file in which the district attorney had dismissed a count charging defendant with forging one of the $123 checks. The court declared in the jury's presence that it took judicial notice of these matters.

The rules regarding evidence of separate crimes are described in some detail in *People* v. *Haston,* 69 Cal.2d 233, 244-247 [70 Cal.Rptr. 419,

444 P.2d 91], and *People* v. *Schader,* 71 Cal.2d 761, 772-773 [80 Cal.Rptr. 1, 457 P.2d 841]. ■ To summarize: Such evidence should be excluded if it does not substantially tend to prove a fact other than the accused's criminal character, because its probative value is outweighed by its prejudicial effect. ■ It is admissible under limited circumstances, when it tends "logically, naturally and by reasonable inference" to establish a fact material to the prosecution or to overcome a fact sought to be proved by the defense. ■ It should be received with "extreme caution" and, if its connection with the crime charged is not clearly perceived, the doubt should be resolved in favor of the accused. ■ Admissibility is within the discretion of the trial court, but must be exercised within the context of the fundamental rule that relevant evidence whose probative value is outweighed by its prejudicial effect, should not be admitted.

In a number of forgery cases California courts have sustained evidence of other forgeries committed by the defendant on the theory that it tends to prove guilty knowledge and intent. (See *People* v. *Brower,* 92 Cal. App.2d 562 [207 P.2d 571]; *People* v. *Berman,* 117 Cal.App. 334 [4 P.2d 226]; Note, 34 A.L.R.2d 777.) ■ Such evidence may be relevant even where the other forgery occurs after the crime charged. (*People* v. *Hansen,* 62 Cal.App. 105, 107 [216 P. 399].) Such evidence has caused reversals where there was no showing that the other "offenses" were actually forgeries or where the defendant was not sufficiently connected with them. (See, e.g., *People* v. *Bird,* 124 Cal. 32 [56 P. 639]; *People* v. *Ross,* 198 Cal. App.2d 723 [18 Cal.Rptr. 307].)

*People* v. *Albertson,* 23 Cal.2d 550, 579 [145 P.2d 7], points out that the prosecution need not prove the other offense beyond a reasonable doubt but must supply substantial evidence that the defendant did in fact commit it. ■ "Circumstantial proof of a crime charged cannot be intermingled with circumstantial proof of suspicious prior occurrences in such manner that it reacts as a psychological factor with the result that the proof of the crime charged is used to bolster up the theory or foster suspicion in the mind that the defendant must have committed the prior act, and the conclusion that he must have committed the prior act is then used in turn to strengthen the theory and induce the conclusion that he must also have committed the crime charged. This is but a vicious circle. ■ Here the evidence of suspicious prior occurrences affords no substantial proof whatsoever connecting defendant in any way with the charge on which he was tried." (*People* v. *Albertson, supra,* 23 Cal.2d at pp. 580-581.)

The "extreme caution" enjoined upon the courts in admitting this kind of evidence is magnified when the prosecution attempts to prove the com-

mission of a crime by a person other than the defendant on trial. Thus in *People* v. *Jackson,* 254 Cal.App.2d 655 [62 Cal.Rptr. 208], the conviction was reversed for error in admitting evidence of another's crimes on the theory that the defendant was an aider and abettor. The court declared (254 Cal.App.2d at p. 660): "We conclude that conviction of a felony cannot rest upon the tenuous evidence of other crimes of a third person, not because an essential element of the crime charged is inferred from circumstantial evidence derived from the third person's commission of other crimes, though subtle proof indeed, but because evidence of crimes committed by a third person who is not on trial saddles a defendant with the burden of proving the innocence of another. Such a burden violates the fundamental principles of due process of the law."

The prosecution apparently offered the three checks on the theory that defendant, having seen Steve Newman write them, aided and abetted the forgeries. The three checks had a degree of relevance. Like the $45 check cashed by Kauck, all three were payable to Jerry Willoughby. Unlike the $45 check, they bore the apparently forged signature of defendant's brother, Lonnie. On the assumption that defendant plotted with Newman to forge and pass the three checks, they tended to show a common pattern involving the forged names of defendant's relatives. The assumption was only an assumption, no more. Newman was not on trial and not called as a witness. No testimony connected defendant with the indorsement or utterance of these three checks. The prosecutor elicited the fact that defendant had seen Newman write these checks. At that point all evidence of defendant's connection with them stopped. His physical presence did not establish his guilt as abettor. (*People* v. *Hill,* 77 Cal.App.2d 287, 294 [175 P.2d 45].) The test of aiding and abetting is whether the accused directly or indirectly aided the perpetrator; the extent of his knowledge is a question of fact provable by circumstantial evidence. (*People* v. *Fleming,* 191 Cal. App.2d 163, 168-169 [12 Cal.Rptr. 530].)

The vice of the prosecution's tactic lay in its failure to produce substantial evidence of defendant's complicity in the other three forgeries. The prosecution produced a suspicion—no more—that defendant had aided and abetted Newman. That suspicion was sharpened (but not confirmed) by the dubious resort to judicial notice of Newman's juvenile court file. While the courts take judicial notice of public records, they do not take notice of the truth of matters stated therein. (*Love* v. *Wolf,* 226 Cal. App.2d 378, 403 [38 Cal.Rptr. 183].) The suspicion was again sharpened (but not confirmed) when further resort to judicial notice made the jury aware that the district attorney had at one time charged defendant with one of these identical forgeries. Thus, by a bootstrap process, the charged forgery was imputed to defendant by tenuous evidence of another forgery

whose proof was so shaky that the prosecutor had dismissed it for lack of evidence.

The prosecution tactic set in motion the vicious circle denounced in *Albertson, supra.* In the eyes of the jury, defendant's possible guilt of the crime charged made probable his complicity in the other three forgeries, while his possible complicity in the other three forgeries made probable his guilt of the crime charged.

Having before it a situation where the evidence's connection with the crime charged could not be "clearly perceived," the trial court was required to resolve the doubt in favor of the accused. (*People* v. *Haston, supra,* 69 Cal.2d at p. 244.) The probative value of the evidence was far outweighed by its prejudicial effect, and its admission represented an abuse of discretion.

Although Mr. Kauck's courtroom identification of defendant was unhesitating, his earlier identification from photographs was characterized by considerable uncertainty. The handwriting evidence was quite inconclusive. Had it not been for the error, there is a reasonable probability that the jury would not have been convinced of defendant's guilt beyond a reasonable doubt. The error thus requires reversal. (*People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243].)

Judgment reversed.

Pierce, P. J., and Janes, J., concurred.