Filed 8/27/13  In re Brendon A. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| In re BRENDON A., a Person Coming Under the Juvenile Court Law. | |
| | D062687 |
| THE PEOPLE, | |
| Plaintiff and Respondent, | (Super. Ct. No. JCM229420) |
| v. | |
| BRENDON A., | |
| Defendant and Appellant. | |


APPEAL from an order of the Superior Court of San Diego County, Carolyn M. Caietti and Browder A. Willis, Judges.  Affirmed.

Steven J. Carroll, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, Barry Carlton, Supervising Deputy Attorney General, and Heather M. Clark, Deputy Attorney General, for Plaintiff and Respondent.

Brendon A. appeals the juvenile court's dispositional order continuing him as a ward of the court and placing him on formal probation. Brendon contends the evidence was insufficient to support the court's findings that he committed one count of misdemeanor battery and two counts of misdemeanor aggravated assault. Brendon also argues the probation condition forbidding him to possess any weapons is invalid because it does not contain an express knowledge requirement. We modify the probation condition to include a knowledge requirement and affirm the dispositional order as modified.

FACTUAL BACKGROUND

After school one day, Brendon and three other boys went to the house of Thomas M. One of the boys brought up the idea of shooting a BB gun, and the boys agreed to do so. The boys passed the gun around and took turns shooting it; Brendon shot the gun two or three times. The gun was fired through three different window screens, leaving 80 holes.

Tyler N. and Michael S. were struck by BB pellets as they passed by Thomas's house at separate times. Tyler was walking alone when he felt a "snap" on his left ankle. He looked down and saw "a little BB gun wound." Tyler did not see the shooter, but he heard multiple people laughing when he was shot. A few minutes later, Michael was walking with his brother and two girls when he was struck twice in the left thigh. As Michael looked at the red marks on his thigh, he and his brother heard something "whizzing" or "swishing" past their ears. Michael and his brother thought someone was

2

shooting at them and ducked behind a pickup truck. When Michael peered over the bed of the truck, a third pellet hit his bicycle helmet.

A police investigator found several BB pellets on the sidewalk across the street from Thomas's house. The investigator also found the BB gun in Thomas's bedroom. The manual that came with the gun stated it could cause great bodily injury or death.

## PROCEDURAL BACKGROUND

The People filed an amended petition under Welfare and Institutions Code section 602 alleging Brendon committed misdemeanor battery on Michael (Pen. Code, § 242), and committed misdemeanor assault by means of force likely to produce great bodily injury on Tyler and Michael (*id.*, §§ 17, subd. (b)(4), 245, subd. (a)(4)). The juvenile court (Hon. Carolyn M. Caietti) conducted an evidentiary hearing and found the allegations of the petition to be true. At the disposition hearing, the court (Hon. Browder A. Willis) continued Brendon as a ward of the court (he had been on court probation at the time of the current offenses), and placed him on formal probation. One of the conditions of probation stated that Brendon "shall not use, possess, transport, sell or have in or under his/her control any firearm, replica, ammunition or other weapon, including a knife, any explosive, or any item intended for use as a weapon, including hunting rifles or shotguns."

## DISCUSSION

A.    *Sufficient Evidence Supports the Juvenile Court's Findings*

Brendon contends the evidence was insufficient to sustain the juvenile court's findings that he committed the battery and assaults alleged against him. Specifically, he

3

argues the People's aiding and abetting theory failed because the prosecutor presented no evidence that Brendon knew of the shooter's unlawful purpose or specifically intended to facilitate the shooter's commission of the offenses.  For reasons we shall explain, we disagree.

       1.     *Standard of Review*

"'The standard of proof in juvenile proceedings involving criminal acts is the same as the standard in adult criminal trials.'"  (*In re Cesar V.* (2011) 192 Cal.App.4th 989, 994.)  When considering a challenge to the sufficiency of the evidence, we review the entire record to determine whether it contains substantial evidence, i.e., evidence that is reasonable, credible, and of solid value, from which a reasonable trier of fact could find the essential elements of the offense beyond a reasonable doubt.  (*Jackson v. Virginia* (1979) 443 U.S. 307, 319; *People v. Foster* (2010) 50 Cal.4th 1301, 1348; *In re James B.* (2003) 109 Cal.App.4th 862, 872.)  We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence, whether the conviction rests primarily on direct or circumstantial evidence.  (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.)  "'Thus, if the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant reversal of the judgment.'"  (*In re V.V.* (2011) 51 Cal.4th 1020, 1026.)

       2.     *Analysis*

The issue here is whether the record contains sufficient evidence to support the People's theory that Brendon aided and abetted the battery and assaults committed against

Michael and Tyler. One who aids and abets another in the commission of a crime is guilty of the crime, even if the other commits some or all of the acts constituting the crime. (Pen. Code, § 31; *People v. McCoy* (2001) 25 Cal.4th 1111, 1117.) Liability as an aider and abettor attaches if the defendant knew the perpetrator intended to commit the crime and the defendant intended to, and did, encourage or facilitate the perpetrator in committing the crime. (*People v. Beeman* (1984) 35 Cal.3d 547, 561.) Whether a defendant aided and abetted the commission of a crime is a question of fact that may be proved by circumstantial evidence. (*Id.* at p. 559; *People v. Long* (1970) 7 Cal.App.3d 586, 591; *People v. Wilson* (1928) 93 Cal.App. 632, 636.) "Among the factors which may be considered in determining aiding and abetting are: presence at the crime scene, companionship, and conduct before and after the offense." (*In re Juan G*. (2003) 112 Cal.App.4th 1, 5.) Considering these factors, we conclude the record contains substantial evidence from which the juvenile court reasonably concluded Brendon aided and abetted the crimes alleged against him.

As an initial matter, there is no dispute that a battery was committed against Michael, or that assaults by means of force likely to produce great bodily injury were committed against Michael and Tyler. The assaults were committed when the BB gun, which its manual stated was capable of causing great bodily injury or death, was fired at Michael and Tyler. (See Pen. Code, § 240 ["An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another."]; *People v. Brown* (2012) 210 Cal.App.4th 1, 7-8 [firing BB gun at victim constitutes assault].) The battery occurred when Michael was hit three times by pellets fired from the BB gun.

5

(See Pen. Code, § 242 ["battery is any willful and unlawful use of force or violence upon the person of another"]; *Vaughn v. Jonas* (1948) 31 Cal.2d 586, 603 [firing gun at and hitting victim with bullets constitutes battery]; *People v. Martinez* (1970) 3 Cal.App.3d 886, 889 ["Any harmful or offensive touching constitutes an unlawful use of force or violence."].)

There was also substantial evidence Brendon aided and abetted the commission of these crimes. Brendon went with three other boys to Thomas's house after school. The boys passed the BB gun around and took turns firing it. Brendon fired the gun a few times, and the boys fired 80 shots altogether, three of which struck Michael and one of which struck Tyler. Tyler heard multiple people laughing when he was hit; and when Michael was hit and ducked for cover, he and his brother heard objects "whizzing" past them. From these facts, the juvenile court reasonably could infer that Brendon knew whoever shot the BB gun at Tyler and Michael was intending to hit them, and that Brendon intended to and did encourage the shooter to do so. (See, e.g., *In re Juan G.*, *supra*, 112 Cal.App.4th at p. 5 [defendant's "presence at the crime scene, companionship, and conduct before and after the offense" may prove aiding and abetting]; *People v. Lucas* (1997) 55 Cal.App.4th 721, 737 [passing gun used in shooting to companion was "tangible act of aiding and abetting"].)

Brendon contends these inferences cannot be drawn because the People "presented no evidence that [he] was in the same room as the shooter when [Michael and Tyler] were hit," or that "Brendon was one of the persons laughing when [Tyler] was struck." We disagree. The People did not have to prove Brendon was in the room when Michael

6

and Tyler were hit by pellets fired from the BB gun, because an aider and abettor "can be convicted of an offense even if he is not in the room when the crime occurs." (*People v. Pelayo* (1999) 69 Cal.App.4th 115, 121.) Nor did the People have to prove Brendon was one of the persons Tyler heard laughing when he was hit. Whether Brendon laughed or not, his "concerted action" with the other boys in passing the BB gun around and taking turns firing it "reasonably implies a common purpose." (*People v. Campbell* (1994) 25 Cal.App.4th 402, 409.) Thus, although the evidence required the juvenile court to draw inferences from the facts in order to find Brendon liable as an aider and abettor, "[c]ircumstantial evidence is as sufficient to convict as direct evidence." (*People v. Reed* (1952) 38 Cal.2d 423, 431; see *People v. Loza* (2012) 207 Cal.App.4th 332, 361 [circumstantial evidence sufficient to support liability as aider and abettor]; *People v. Santana* (2000) 80 Cal.App.4th 1194, 1200 [same].)

B.    *The Probation Condition Regarding Possession of Weapons Must Be Modified to Contain a Knowledge Requirement*

Brendon contends the condition of probation concerning weapons is invalid because it does not contain a knowledge requirement, and asks us to modify the condition to include such a requirement. The People respond that no modification is necessary because a knowledge requirement may be read into all probation conditions, but concede we "may choose to modify the probation condition to include a knowledge requirement." We accept the People's concession and order the modification requested by Brendon. (See, e.g., *People v. Freitas* (2009) 179 Cal.App.4th 747, 752 ["We agree with defendant that it is appropriate to modify the probation condition to specify that defendant not

7

*knowingly* possess the prohibited items."]; *In re Victor L.* (2010) 182 Cal.App.4th 902, 912-913 [modifying condition of probation prohibiting minor's presence near weapons or ammunition to make knowledge requirement explicit].)

## DISPOSITION

The probation condition of the dispositional order concerning weapons is modified to read:  "The minor shall not knowingly use, possess, transport, sell or have in or under his control any firearm, replica, ammunition or other weapon, including a knife, any explosive, or any item intended for use as a weapon, including hunting rifles or shotguns."  As so modified, the order is affirmed.  The juvenile court is directed to forward a certified copy of the modified dispositional order to the probation authorities.


 

 

 

_____

IRION, J.

WE CONCUR:


_____

BENKE, Acting P. J.


_____

HALLER, J.

8