[Crim. No. 356.   Fifth Dist.   Sept. 22, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. LUDIE CLYDE JACKSON, Defendant and Appellant.

William O. Minor, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Raymond M. Momboisse and Kelvin L. Taylor, Deputy Attorneys General, for Plaintiff and Respondent.

STONE, J.—Defendant was convicted of an attempt to commit grand theft. He appeals on the ground that the evidence was insufficient to establish specific intent, an essential element of the crime. In support of his contention, defendant raises two collateral issues, first, that evidence of other offenses was improperly admitted to prove the requisite intent and, second, that evidence of one of the other alleged offenses was the product of an illegal search and seizure.

Because a number of thefts had occurred at Pacific Gas & Electric ˙ Company substations, two officers conducted a "stake out" on September 21, 1966, at the substation near Los Banos. Two fences surrounded the substation, an inner chain-link fence with a locked gate at the entrance, and a barbed-wire fence some distance beyond the chain-link fence. About 11:30 p.m. the two deputies saw defendant and one Charles Lee walking away from the substation. At the time, they were outside the chain-link fence but inside the barbed-wire fence, each then carrying an unidentified object in his hand. Upon seeing the officers. the men ran. and after they had crossed through the barbed-wire fence the officers noted that neither had anything in his hand. The officers gave chase, and took both men into custody.

A search near the barbed-wire fence turned up a bolt cutter and a wire cutter. A lock on one of the gates in the chain link fence had been cut. An inventory of the substation property

showed that nothing had been taken, but there was property much in excess of $200 in value within the chain-link fence.

Defendant was taken to the Merced County jail where, after questioning, he told a sheriff's lieutenant that a 1957 Dodge pickup belonging to Lee was parked on the parking lot of the Santa Nella Bar about two or three miles north of the substation. The following morning the pickup was located by a deputy sheriff. A bolt cutter found in the pickup was received in evidence, and defendant contends it was obtained by an illegal search.

To prove defendant's intent to steal property valued at more than $200, the prosecution was permitted to introduce evidence of four other similar crimes. It is conceded that defendant was not shown to have been connected to any of them. The People's theory is that Lee, who was arrested along with defendant, was defendant's accomplice, that defendant had the same intent as Lee, and to prove Lee's intent evidence of other similar crimes attributed to him was introduced.

This imputed intent presupposes Lee's guilt of the principal crime, yet as far as the record before us goes he was not charged with the crime and he was not called as a witness by either side. Thus the presupposition places on defendant the burden of proving Lee's innocence of the principal crime in order to avoid the imputation to him of Lee's intent. Defendant's burden of proof was augmented by the prosecution's expedient of proving Lee's intent by circumstantial evidence predicated upon Lee's alleged participation in similar crimes.

Pacific Gas & Electric Company employees testified as to four prior thefts from substations, in each of which property worth more than $200 was stolen. At the scene of the crime in which defendant was apprehended, a wire cutter was found near the fence. It was identified by P. G. & E. men as having been taken in one or the other of two similar thefts at the Zamora substation, some 100 miles to the north. A bolt cutter found in Lee's truck the day after the arrest was likewise identified as having been stolen during one of the two Zamora thefts. A third prior substation burglary was linked to Lee by a tire tread made by a tire similar to one on the rear of Lee's pickup truck. The fourth substation theft testified to was not connected to Lee or anyone else.

In discussing the evidence of other crimes that was clearly inadmissible, we make the threshold observation that it was error to receive evidence of a crime connected to no one at all,

658

The Attorney General argues that "the proximity in time and the similarity in method were sufficient to allow the evidence to be admitted and the trial judge could give it whatever weight he saw fit."

We assume, although the argument does not so read, that the Attorney General means to infer that since the case was tried before the court without a jury, the trial judge was not misled or unduly influenced by the evidence. The impact of inadmissible evidence may differ in cases tried by a court or by a jury, but we are here concerned with the fundamental question of admissibility of evidence in the first place.

■ Evidence of other similar crimes linked to no one at all is clearly inadmissible to prove any element of the crime charged against a defendant, even though the crime occurred within reasonable proximity of time and place. (*People* v. *Bird,* 124 Cal. 32, 35 [56 P. 639]; *People* v. *Albertson,* 2 Cal.2d 550, 577 [145 P.2d 7]; *People* v. *Edwards,* 159 Cal. App.2d 208, 214 [323 P.2d 484].) The perversity of the Attorney General's argument is apparent when carried to its logical conclusion; for example, pursuant to his reasoning a defendant charged with robbing a service station could be convicted by proof that four other service stations were robbed in the same city on the same night by persons unknown, simply because the *modus operandi* as to each of the other crimes was the same as that employed to commit the crime charged.

■ We also find sound defendant's contention that the bolt cutter seized as the result of a search of Lee's truck, made without a search warrant, was erroneously received in evidence over his objection. It was obtained in this manner: Defendant was arrested about 11:30 p.m. September 21. In the early morning hours of September 22, during questioning in the Merced County jail, he advised Lieutenant Bowling that Lee's Dodge pickup truck was parked at the Santa Nella Bar parking lot. About 9 o'clock that morning Lieutenant Bowling instructed a deputy sheriff to check in the area of the parking lot for the vehicle, which the officer said Bowling described as a white Buick. The officer located the Dodge pickup on the parking lot, called headquarters to verify the registration because no certificate was visible, and learned that it was registered to Louise or Charles Lee. The deputy then called Lieutenant Bowling, who advised him to have it stored. The deputy took an inventory before impounding the pickup, and discovered the bolt cutter. The inventory was made on the Santa Nella Bar parking lot.

From the foregoing facts it is quite apparent that the search made sometime after 9 a.m. September 22 was not incident to the arrest at 11:30 p.m. September 21. Nor did the search take place in the same general area as the arrest; the parking lot was between two and three miles from the substation where defendant and Lee were arrested. Finally, the search, inventory and seizure made at the time the truck was impounded cannot be said to be a continuation of a search lawfully begun at the time of arrest.[1] That the vehicle belonged to Lee does not preclude defendant from asserting that his constitutional rights were violated by the illegal search. (*People* v. *Martin*, 45 Cal.2d 755 [290 P.2d 855].)

We turn to the remaining evidence of other crimes connected with Lee and note, at the outset, that the Supreme Court, in reiterating the general rule that evidence of other crimes ordinarily is admissible where it tends to prove intent, warned that ''The evidence should be received with 'extreme caution,' and if its connection with the crime charged is not clearly perceived, the doubt should be resolved in favor of the accused.'' (*People* v. *Kelley,* 66 Cal.2d 232, 239 [57 Cal.Rptr. 363, 424 P.2d 947].)

This cautionary admonition relates to prior crimes of the defendant himself; we are confronted with the admissibility of prior crimes of another. Plaintiff asserts, with faultless syllogistic reasoning, that Lee's intent to commit grand theft could be proved by other crimes, that defendant was an aider and abettor of Lee, that other crimes of Lee are admissible to prove his intent which, in turn, is imputed to defendant as an aider and abettor. But the admissibility of evidence does not rest upon syllogistic logic.

Wigmore points out that where other crimes of a defendant himself are offered, ''the use of alleged particular acts ranging over the entire period of the defendant's life makes it impossible for him to be prepared to refute the charge, any or all of which may be mere fabrications.'' (1 Wigmore on Evidence (3d ed.) p. 646; see also *People* v. *Kelley, supra,* 66 Cal.2d at p. 239; *People* v. *Cramer,* 67 Cal.2d 126 [60 Cal.Rptr. 230, 429 P.2d 582]; Fricke & Alarcon, Cal. Criminal Evidence (6th ed.) p. 290.) How much more impossible it is for a defendant to be prepared to refute charges against another. Conceding that had Lee been tried

[1]For a discussion of vehicle searches without a warrant and of continuing search, see *People* v. *Williams,* 67 Cal.2d 226 [60 Cal.Rptr. 472, 430 P.2d 30].

jointly with defendant the other crimes would have been admissible to prove Lee's intent, and that defendant could have been found guilty as an aider and abettor of Lee, this does not make the evidence of other crimes of Lee admissible where defendant alone is on trial. Defendant cannot be called upon to prove Lee's innocence of other crimes.

We conclude that conviction of a felony cannot rest upon the tenuous evidence of other crimes of a third person, not because an essential element of the crime charged is inferred from circumstantial evidence derived from the third person's commission of other crimes, though subtle proof indeed, but because evidence of crimes committed by a third person who is not on trial saddles a defendant with the burden of proving the innocence of another. Such a burden violates the fundamental principles of due process of the law.

The judgment is reversed.

Conley, P. J., and Gargano, J., concurred.