[No. E009560. Fourth Dist., Div. Two. Oct. 28, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
ROLANDO NICOLAS MARTINEZ, Defendant and Appellant.

**COUNSEL**

Robert J. Russo, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Laura Whitcomb Halgren and Warren P. Robinson, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**HOLLENHORST, Acting P. J.**—After jury trial, defendant was convicted of violating Vehicle Code section 10851, unlawfully driving a vehicle (count I), violating Penal Code section 496, receiving the same vehicle as stolen property (count II), violating Vehicle Code section 4463, possession of a forged or false ownership certificate (count III), and violating Vehicle Code section 14601.2, subdivision (a), driving a vehicle with a suspended license when the license was suspended for driving under the influence of alcohol or drugs (count IV).

On appeal, defendant contends: (1) the trial court erred in denying his *Wheeler*[1] motion; (2) the trial court erred in allowing expert testimony regarding auto theft rings; (3) the trial court erred in directing a verdict against defendant on count IV; and (4) the trial court erred in denying his motion for new trial based on juror misconduct. The People correctly concede the trial court erred in directing a verdict against defendant on count IV and we therefore reverse the judgment on that count. Further we reverse the judgment on the remaining counts because the trial court erred in admitting police officer testimony regarding other auto thefts.

FACTS

On the morning of July 26, 1990, Patricia Breen discovered that her Toyota 4-Runner was stolen in Reseda, California. When she had last seen her car it had Colorado license plates on it.

Around 2 a.m. the morning of July 29, 1990, a California Highway Patrol officer stopped a Toyota 4-Runner near Blythe, California, for a traffic violation. The vehicle had a California license plate on it and was driven by defendant.

When the officer ran defendant's driver's license number through the computer system, he discovered the license had been suspended. The registration card defendant presented to the officer appeared irregular. A certificate of title which had defendant's name and an address of 1328½ West 28th Street in Los Angeles appeared to be a forgery. The officer ran the vehicle's vehicle identification number (VIN) through the computer and discovered the car was stolen, at which time defendant was arrested.

The vehicle driven by defendant was determined to be Patricia Breen's car. Shirley Howell from the Department of Motor Vehicles examined the registration and certificate of title and found them to be high quality forgeries.

When interviewed by the police, defendant said that he had purchased the vehicle on July 28, 1990, in San Pedro. He did not know the person from whom he purchased the car. He paid the person $2,500 on July 28 and a balance of $1,500 the following day when the person brought the vehicle to defendant's residence. Defendant was heading to Guatemala when he was arrested.

A defense investigator went to the area in San Pedro where defendant said he bought the car to try to locate the seller. Although the seller was not

---

[1] *People v. Wheeler* (1978) 22 Cal.3d 258 [148 Cal.Rptr. 890, 583 P.2d 748].

located, the investigator noted that there were many cars being sold by private parties in that area.

### EXPERT TESTIMONY REGARDING AUTO THEFT RINGS

Prior to trial, defendant moved *in limine* to exclude any evidence that defendant was aiding and abetting or conspiring with one or more other unknown persons. The trial court granted the motion but then stated it would allow the prosecution to bring in expert opinion evidence on how auto theft rings operate. Thereafter, over defendant's objection, the court allowed Officers Gary Peterson and Fred Miramontes, both of the California Highway Patrol, to testify.

Officer Peterson had been a state traffic officer since June of 1986. As the area VIN officer, his responsibilities include assigning VIN numbers to newly constructed vehicles such as dune buggies and homemade trailers and replacing VIN numbers for vehicles where the VIN number has been removed for one reason or another. He has also participated in 59 investigations regarding vehicles being stolen from the Southern California area and taken to Central America.

In the course of these investigations, he found that the vehicle types targeted for transportation to Central America were small foreign-make pickup trucks. The Toyota 4-Runner fit the profile of the type of vehicles stolen from Southern California.

The almost exclusive route used by those persons moving vehicles to Central America was Interstate 10 through El Paso, Texas and down through Mexico.

Most of these stolen vehicles have altered or counterfeited registration receipts and certificates of title. The alterations on the registration card presented by defendant were very similar to the alterations he has seen in well over 20 of the 59 stolen vehicles cases he has investigated.

The officer also testified that a number in the upper right-hand corner of the certificate of title in defendant's possession, 1468770, was similar to numbers he had seen on other certificates in his prior investigations and that he personally had contact with "12 of the 770 pinks. . . . Most of them are 1468770. However, there are a few that have a 4 in front making it 41468770." Finally he testified that more than half of the investigations he has been involved in have been "cold-plated" which means the license plates on the stolen vehicle do not reflect a stolen vehicle.

Next the prosecution called Officer Fred Miramontes, also employed by the California Highway Patrol. He spent four of his eleven and one-half years of service in the investigative service unit. During his years with the investigative services unit, the unit acted as a liaison with Mexican authorities. The purpose of the unit was the identification of United States vehicles in Mexico and retrieving some of the vehicles back to the states. Eighty percent of his time is spent working in Mexico with Mexican authorities. He was also involved in investigating the theft of vehicles from California being transported to Central America. Based on arrests and interviews he has conducted in Mexico, the bulk of the cars are going to Guatemala and El Salvador.

The most common vehicles recovered by officers stationed in Blythe, by Mexican authorities and by the Mexican Federal Highway Patrol are Toyota 4-by-4 pickups, Toyota 4-Runners, Nissan pickups, Nissan Pathfinder and Izusu. These vehicles are more highly targeted because they can be hot-wired and they are ideal for the terrain down there.

The bulk of the recoveries, about 95 percent, are coming out of the Los Angeles area. In the four years he has been assigned to the investigative unit, the officer believed that the number of vehicles he has been involved with which were stolen from Southern California and transported into Mexico and Central America would probably be in the hundreds.

Based on arrests that have been conducted by uniformed police officers, especially in the Blythe area and on tests conducted by Mexican and federal authorities, the majority of cars leave the state through Interstate 10 and Interstate 8. The majority of the arrests occur Thursday evening through Monday morning, at night or early morning hours. Based on interviews of persons detained, the information is that the drivers are paid approximately $1,000 to $1,500. Over half of those detained in the United States and in Mexico carry false documents. Over half the people that he personally has interviewed have a false certificate of title with the same number, 1468770, as was on the certificate of title defendant was carrying. Based on interviews conducted with detainees, the majority of them indicate they did not know the cars were stolen and/or claim they bought the vehicles on a street corner.

█ Defendant contends the evidence constitutes improper expert evidence similar to the drug courier profile evidence, that federal circuit courts have held to be inadmissible to prove guilt. The People contend the decision to allow expert testimony lies within the trial court's discretion which cannot be disturbed on appeal absent a showing of an abuse of that discretion. Here we conclude the trial court abused its discretion in admitting the evidence.

In rejecting drug courier profile evidence as substantive proof of guilt, the federal circuit courts have concluded: "Drug courier profiles[2] are inherently prejudicial because of the potential they have for including innocent citizens as profiled drug couriers. Generally, the admission of this evidence is nothing more than the introduction of the investigative techniques of law enforcement officers. Every defendant has a right to be tried based on the evidence against him or her, not on the techniques utilized by law enforcement officers in investigating criminal activity. Drug courier profile evidence is nothing more than the opinion of those officers conducting an investigation." (*United States* v. *Hernandez-Cuartas* (11th Cir. 1983) 717 F.2d 552, 555; *United States* v. *Beltran-Rios* (9th Cir. 1989) 878 F.2d 1208, 1210; *United States* v. *Quigley, supra,* 890 F.2d 1019, 1023-1024.)

Here we agree that although the evidence was not characterized per se as a "profile," the clear thrust of the evidence was to establish that defendant "fit" a certain "profile." The evidence showed (1) the car he was driving was similar to many other stolen vehicles being transported to Central America, (2) his selection of a route (Interstate 10) was similar to that used by many other drivers of stolen vehicles transporting vehicles to that area; (3) the time of his travel was similar to that of many other drivers of stolen vehicles; (4) the false documents he was carrying were similar to false documents found on other drivers of stolen vehicles; and (5) his denial of knowledge and his claim that he bought the car on a street corner was similar to the stories given by many other drivers of stolen vehicles.

We agree this type of evidence is inherently prejudicial. While the similarities may be a proper consideration for law enforcement in investigating criminal activity, they are inappropriate for consideration on the issue of guilt or innocence for the very reason given in the drug courier profile cases: the potential of including innocent people as well as the guilty.

In reaching our conclusion the trial court erred in admitting this evidence, we need not rely on federal authority exclusively. In *People* v. *Jackson* (1967) 254 Cal.App.2d 655 [62 Cal.Rptr. 208], the appellate court found error in the trial court's admission of evidence of other crimes which were unconnected to defendant. In that case, in an effort to prove defendant's intent to steal property, the prosecution offered and the trial court admitted evidence of four other *similar* crimes. Defendant was not shown to be connected to any of them. An alleged accomplice of defendant was shown to

---

[2]"[T]he drug courier profile [is] an 'informal compilation of characteristics often displayed by those trafficking in drugs,' [citation], and . . . an 'abstract of characteristics found to be typical of persons transporting illegal drugs.' " (*United States* v. *Quigley* (8th Cir. 1989) 890 F.2d 1019, 1021.)

be connected to three of the four other crimes but the fourth theft was not connected to defendant's alleged accomplice or to anyone else.

In finding error in the admission of this evidence, the court noted, first, evidence of a crime connected to no one is never admissible. "Evidence of other similar crimes linked to no one at all is clearly inadmissible to prove any element of the crime charged against a defendant, even though the crime occurred within reasonable proximity of time and place. [Citations.] The perversity of the Attorney General's argument is apparent when carried to its logical conclusion; for example, pursuant to his reasoning a defendant charged with robbing a service station could be convicted by proof that four other service stations were robbed in the same city on the same night by persons unknown, simply because the *modus operandi* as to each of the other crimes was the same as that employed to commit the crime charged." (*People* v. *Jackson, supra,* 254 Cal.App.2d 655, 658.)

In rejecting the evidence of crimes connected to defendant's alleged accomplice, the court determined "conviction of a felony cannot rest upon the tenuous evidence of other crimes of a third person, not because an essential element of the crime charged is inferred from circumstantial evidence derived from the third person's commission of other crimes, though subtle proof indeed, but because evidence of crimes committed by a third person who is not on trial saddles a defendant with the burden of proving the innocence of another. Such a burden violates the fundamental principles of due process of the law." (*People* v. *Jackson, supra,* 254 Cal.App.2d 655, 660.)

Similarly, in *People* v. *Long* (1970) 7 Cal.App.3d 586 [86 Cal.Rptr. 590], the Court of Appeal found error in the admission into evidence of three forged checks admitted to have been forged by another person which were similar to the check passed by defendant. " 'Circumstantial proof of a crime charged cannot be intermingled with circumstantial proof of suspicious prior occurrences in such manner that it reacts as a psychological factor with the result that the proof of the crime charged is used to bolster up the theory or foster suspicion in the mind that the defendant must have committed the prior act, and the conclusion that he must have committed the prior act is then used in turn to strengthen the theory and induce the conclusion that he must also have committed the crime charged. This is but a vicious circle.' " (*Id.,* at p. 590, quoting from *People* v. *Albertson* (1944) 23 Cal.2d 550, 580-581 [145 P.2d 7].)

The "vicious circle" referred to in *Albertson* and *Long* is present in this case. Presumably the purpose of the evidence was to show that defendant

was lying when he claimed he bought the car on a street corner and did not know it was stolen. The prosecution tried to prove this by showing that other drivers found driving similar vehicles under similar circumstances made the same claim. Here the prosecution implicitly asked the jury to use defendant's disavowal of knowledge to bolster the theory that the other drivers were lying when they denied knowledge and then using that conclusion in turn to reach the conclusion that defendant knew the vehicle was stolen. This sort of bootstrap reasoning is impermissible, and the trial court erred in admitting the evidence of other crimes without first requiring proof that defendant was connected with the other crimes.

Nor can we conclude the error in admitting this evidence was harmless. The issue of defendant's knowledge and intent, being dependent upon circumstantial evidence, was close. The officers' testimony was a major portion of the prosecution's case and was emphasized in his closing argument. We can only conclude there is a reasonable probability that a result more favorable to defendant would have been reached in the absence of this error.

DISPOSITION

Judgment reversed.

Timlin J., and McDaniel J.,* concurred.

Respondent's petition for review by the Supreme Court was denied February 10, 1993.

---

*Retired Associate Justice of the Court of Appeal, Fourth District, senior judge status (Gov. Code, § 75028.1), sitting under assignment by the Chairperson of the Judicial Council.