Filed 11/7/13  P. v. Mendez CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B245874 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA390747) |
| v. | |
| RAYMUNDO MENDEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Gail Ruderman Feuer, Judge.  Affirmed.

Helen Simkins Irza, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Kenneth C. Byrne and Julie A. Harris, Deputy Attorneys General, for Plaintiff and Respondent.

* * * * * * * * * *

Defendant Raymundo Mendez was convicted of assault with personal use of a firearm. The chief defense was mistaken identity. Three eyewitnesses identified defendant as the assailant. One eyewitness said defendant was wearing a blue shirt with no vest or jacket at the time of the assault. When defendant was stopped by police a few minutes later, he was wearing a jacket. Another eyewitness said defendant was wearing a blue shirt and a vest, and an investigating officer noted in her report defendant was wearing a vest. The only claimed error on appeal is the court erred in allowing the arresting officer, who was called as a defense witness, to testify on cross-examination that it is common for people who commit gun crimes to change clothes after the crime and discard the gun. Defendant argues this evidence was irrelevant and inherently prejudicial "profile" evidence.

Defendant waived this claim by failing to object at trial on the ground the evidence was irrelevant or prejudicial. In any event, we find no merit to the claimed error. Courts have condemned the prosecution's use of expert testimony to describe the method and means of a particular type of criminal to commit a particular type of crime as evidence that, since the charged crime shares the same or similar characteristics, the defendant must also be guilty of committing the same crime. The brief cross-examination of the arresting officer in this case does not come close to falling within this prohibited category of profile evidence.

## BACKGROUND

The three eyewitnesses were Jose Sanchez, Jessica Mendoza and Christian Maldonado. Sanchez drove Mendoza and Maldonado into the parking area of the Oasis Hotel after an evening at a local club. Maldonado got out and approached the reception office to inquire about getting a room while Sanchez and Mendoza waited in the car. The parking lot was well lit.

Three men in the parking lot followed Maldonado as he approached the office and knocked on the door. There was no response, and Sanchez called to Maldonado to get back in the car. The men followed Maldonado back to the car. After Maldonado got into the front passenger seat, one of the men standing near the passenger side door indicated

2

to Maldonado to roll down his window, which Sanchez did slightly, and the man said something. Defendant walked around to the driver's side, pulled out a handgun, racked it, pointed it at Sanchez, and told him to get out of the car. Instead, Sanchez drove off and called 911. Sanchez, Maldonado, and Mendoza each got a good look at defendant's face. Sanchez saw defendant's face for about four minutes.

Three to five minutes after driving away, Sanchez swung around and returned to the Oasis Hotel, where there were already five or six police cars. The three got out of the car and spotted defendant with his companions. Sanchez and Maldonado pointed them out to the police and the three started to hurry off, but the helicopter shined its light on them, and the police stopped and handcuffed the men. Sanchez, Mendoza and Maldonado all identified defendant as the man with the gun. Police arrested him, detained the others and later released them. Police searched for the gun but none was found.

The defense at trial was mistaken identity. Defendant offered the alibi testimony of his friend Edgar Puac and Edgar's brother, Pasqual Puac. Edgar testified he and defendant had been drinking beer together and had gone to get more beer when they were assaulted by gangsters who beat up defendant and left him bleeding on the ground of the parking lot at the Oasis Hotel. Edgar called Pasqual for help, and Pasqual arrived 10 to 15 minutes later to pick them up. The police arrived just as Pasqual and Edgar were about to help defendant into the car. Defendant testified in his own defense to a similar version of events.

The police officer at the scene, and the officer who transported defendant to the station, testified they did not see any blood on defendant or on his clothing and he did not tell them he had been assaulted or that he was in pain or needed a doctor.

When Sanchez had called 911, he said defendant was wearing blue pants and a blue shirt, but did not mention a vest or jacket. When the three eyewitnesses gave statements to the police at the scene a few minutes later, Maldonado said defendant was wearing a blue shirt with a black vest over it when he pointed a gun at Sanchez, but was wearing a jacket when he was arrested by police. According to Sanchez, defendant put

3

on a black jacket before the police arrived at the Oasis Hotel; he was not wearing a jacket or vest when he pulled a gun on Sanchez. Defendant called Officer Zadi Borquez as a defense witness. Officer Borquez and his partner were the first to arrive on the scene. According to Officer Borquez, his police report noted that defendant was wearing a black vest at the time of his arrest. Respondent suggests the witnesses were referring to the same garment variously as a vest or a jacket, but we are in no position to draw that inference because the record does not support it.[1] The testimony was inconsistent as to whether or not defendant was wearing a vest at the time of the assault and whether or not he was wearing a vest or a jacket at the time of the arrest.

On direct examination by the defense, Officer Borquez testified the gun was never found. During the prosecution's cross-examination, Officer Borquez was asked whether it is "typical in [his] experience as a police officer that there are . . . many times calls or incidents where a suspect was armed?" The prosecutor asked whether there are times when "you don't find a weapon?" Defense counsel objected on the basis of foundation, and the objection was sustained. Accordingly, the prosecutor asked how long Officer Borquez had been a peace officer, whether he had "responded to calls as a peace officer where people have used weapons," and whether he had responded to calls where the weapon was not located. Officer Borquez answered, "Yes." The prosecutor then asked if it was "pretty common for you to have calls where a perpetrator uses a weapon and one is never recovered." Officer Borquez again answered affirmatively. Defense counsel lodged a general objection, which was overruled. The prosecutor then asked whether defendant was wearing a black jacket at the time of his arrest, and whether it was "common . . . to have suspects that quickly change their description" by taking off an article of clothing. Defense counsel did not object, and Officer Borquez answered, "Yes." It is the admission of this testimony which defendant claims as reversible error.

---

[1] Sanchez was quite clear that defendant was wearing a black jacket, and not a vest, at the time of his arrest.

4

## DISCUSSION

Defendant claims the admission of this brief testimony of Officer Borquez on cross-examination by the prosecutor was "profile" evidence of little or no probative value but great prejudicial effect. He contends this issue was not waived by trial counsel's failure to object on this basis, or, alternatively, that he received ineffective assistance of counsel. We are not persuaded. The evidence was not profile evidence. Rather, the evidence was intended to rebut defendant's mistaken identity defense. Also, the alleged error was waived. Defendant did not object on the ground asserted on appeal, and because the challenged evidence was admissible, any objection would have been meritless, and counsel's failure to object does not constitute ineffective assistance. (*People v. Williams* (1997) 16 Cal.4th 635, 661; *People v. Mitchell* (2008) 164 Cal.App.4th 442, 466-467; *People v. Chaney* (2007) 148 Cal.App.4th 772, 778.)

"A profile is a collection of conduct and characteristics commonly displayed by those who commit a certain crime." (*People v. Robbie* (2001) 92 Cal.App.4th 1075, 1084.) "In profile testimony, the expert compares the behavior of the defendant to the pattern or profile and concludes the defendant fits the profile." (*People v. Prince* (2007) 40 Cal.4th 1179, 1226.) Various courts have rejected the use of profile evidence as substantive proof of guilt. The federal courts rejected the use of drug courier profile evidence to prove guilt, that is, expert testimony describing the characteristics often displayed by those trafficking in drugs which is similar to the behavior of the defendant on trial. (See, e.g., *United States v. Quigley* (8th Cir. 1989) 890 F.2d 1019, 1021.) California Courts of Appeal have also found it an abuse of discretion to admit profile testimony. (See, e.g., *People v. Robbie, supra*, at p. 1084; *People v. Castaneda* (1997) 55 Cal.App.4th 1067, 1071-1072; *People v. Martinez* (1992) 10 Cal.App.4th 1001, 1006-1008.)

For example, it was an abuse of discretion to admit an expert's testimony describing in detail how auto theft rings operate, such as the type of cars that are stolen, the routes selected to transport them and the false documentation typically encountered, to prove the defendant's guilt because he was driving a similar vehicle on a similar route

5

and shared other characteristics typical of auto thieves. (*People v. Martinez*, *supra*, 10 Cal.App.4th at pp. 1006-1008.) Similarly, it was an abuse of discretion to admit expert testimony that most heroin dealers in Northern San Diego County are Hispanic male adults, to prove the Hispanic male adult on trial was guilty of heroin possession. (*People v. Castaneda*, *supra*, 55 Cal.App.4th at pp. 1071-1072.) While finding the admission of profile evidence is not reversible per se, another court found it was an abuse of discretion to admit expert testimony describing an archetypal "friendly" rapist who uses minimal force, drives the victim back home to her neighborhood after the assault and asks questions about her life, to prove the similar behavior of the defendant on trial proved his guilt of rape because he matched the profile of the friendly rapist. (*People v. Robbie*, *supra*, 92 Cal.App.4th at pp. 1084, 1087-1088.)

Our Supreme Court has held profile evidence is inadmissible "only if it is either irrelevant, lacks a foundation, or is more prejudicial than probative." (*People v. Smith* (2005) 35 Cal.4th 334, 357.) The court explained the proper analysis to determine the admissibility of profile evidence is by weighing the Evidence Code section 352 factors, and that "prejudice" in section 352 "does not refer simply to evidence that is damaging to the defendant. Instead, " ' "[t]he 'prejudice' referred to in section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual *and which has very little effect on the issues*." ' " (*Smith*, *supra*, at p. 357, citation omitted.) Accordingly, "[p]rofile evidence is objectionable when it is insufficiently probative because the conduct or matter that fits the profile is as consistent with innocence as guilt." (*Id*. at p. 358.)

These authorities demonstrate the brief testimony of Officer Borquez was not inadmissible profile evidence. It was relevant to rebut the inference that defendant was misidentified because he wore different clothes and had no gun, and it was not likely to incite the jury's bias or passion against defendant. In the cases defendant has cited finding reversible error in the admission of profile testimony, the prosecution called an expert to describe at some length the stereotypical behavior of certain types of criminals to show the behavior of the defendant on trial matched the stereotype and therefore the

6

defendant was guilty. (See *People v. Robbie*, *supra*, 92 Cal.App.4th at p. 1084; *People v. Martinez*, *supra*, 10 Cal.App.4th at pp. 1006-1008.) In contrast, here, the prosecution did not offer the testimony of Officer Borquez as part of its case-in-chief to prove that defendant fit the profile of a criminal by changing his clothes and discarding the gun. Rather, Officer Borquez was a *defense* witness, and the brief testimony challenged here was on the prosecutor's cross-examination.

Defendant had elicited testimony from Officer Borquez and other witnesses to underscore the differences in testimony as to whether or not defendant was wearing a vest or a jacket, and to highlight the evidence that defendant was not found in possession of a gun. In opening statement, defendant asserted the mistaken identity defense and developed that theme throughout trial. The prosecution's cross-examination of Officer Borquez was in fair rebuttal of the defense theme that the police arrested the wrong man, by offering circumstantial evidence to suggest defendant may have disposed of the gun and changed clothes to avoid being identified as the assailant.

No case finding evidence had been improperly admitted as prejudicial profile evidence is similar to this case, where a defense witness answered a few questions on cross-examination that elicited testimony to rebut a defense, as opposed to evidence offered by the prosecution to prove guilt by comparing defendant with the profile of a criminal. We doubt any jury would be inclined to find defendant guilty based on evidence that he was *not* wearing the same clothes the eyewitnesses described the assailant had been wearing a few minutes earlier, and evidence that *no gun* was found on or near him. We do not find the record here demonstrates the prosecution attempted to improperly establish defendant's guilt based on the evidence that he wore different clothes than the assailant and bore no gun or other weapon. Since we find no abuse of discretion in the admission of Officer Borquez's testimony, the only issue raised on appeal, we affirm the judgment.

**DISPOSITION**

The judgment is affirmed.

GRIMES, J.

We concur:

BIGELOW, P. J.

FLIER, J.