Filed 7/21/22  P. v. Remy CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>WILLIE JAMES REMY, JR.,<br><br>        Defendant and Appellant. | E071805<br><br>(Super. Ct. Nos. RIF1506080, RIF1604605)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Godofredo Magno, Judge.  Affirmed with directions.

Helen S. Irza, under appointment by the Court of Appeal, for Defendant and Appellant.

Matthew Rodriguez, Acting Attorney General, Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael P. Pulos, Kathryn A. Kirschbaum, Joseph C. Anagnos, Charles, C. Ragland, Melissa A. Mandel and Warren J. Williams, Deputy Attorneys General, for Plaintiff and Respondent.

1

## I.

## INTRODUCTION

Defendant and appellant Willie James Remy, Jr., was convicted of unlawful possession of weapons, ammunition, and drug paraphernalia. In a separate proceeding, he was convicted of domestic violence and assault with a deadly weapon. The trial court sentenced him to 18 years, eight months.

Defendant argues the trial court erroneously admitted expert testimony from a police detective about domestic violence. We disagree. Defendant also argues, and the People agree, that the matter should be remanded for resentencing and for a hearing on his ability to pay the fines and fees that the trial court imposed. We agree with the parties that remand for resentencing and an ability-to-pay hearing is appropriate. We therefore affirm defendant's convictions and remand for resentencing.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

In September 2015, a neighbor saw a gun in defendant's waistband and called 911. Defendant put the gun in the trunk of his car. The responding officers searched defendant and his car. The officers found a revolver and a box of 46 rounds in the car and a methamphetamine pipe in his pocket.

About a year later, police were dispatched to the apartment defendant shared with his girlfriend, K.B., her nine-year-old daughter, and her eight-year-old son. K.B.'s daughter called 911 to report that defendant was "pepper spraying my mom, and he's

grabbing her and throwing her." When the officers arrived, K.B. had a laceration on her forehead.

At the police station later that day, K.B. gave a statement and was photographed. K.B. described defendant's abuse from that day and several prior incidents. K.B.'s children also gave statements about defendant's abuse of K.B. that they had witnessed.

Child Protective Services (CPS) interviewed the children on the day of the incident. K.B.'s daughter told CPS that she left the apartment when K.B. and defendant started fighting. When she returned, she saw defendant straddling and choking K.B. and noticed that K.B. was bleeding. She ran to a neighbor's house and called 911.

K.B.'s daughter was interviewed again a few months later. Her statement matched her previous statement on the day of the incident. She also described prior incidents of defendant's abuse of K.B.

On the day of the incident, K.B.'s son told CPS that he saw defendant on top of K.B. and choking her. He said that defendant pepper sprayed K.B. and threw the bottle at her, which caused her to bleed. He also said that he had seen defendant spray K.B. with pepper spray several times in the past.

K.B.'s son was interviewed again a few months later. His statements were consistent with his prior statements.

CPS also interviewed K.B. on the day of the incident. K.B. said defendant was sleeping in and the children woke him up. Defendant started yelling at K.B., grabbed her, squeezed her arms, and started breaking things. Defendant grabbed her by the neck and

"kind of choked" her. K.B. told her daughter to call 911, so her daughter left the apartment to get help. Defendant then sprayed K.B. with pepper spray. He threw the pepper spray canister at her, which hit her forehead and caused her to bleed. K.B. explained that defendant had punched her before and had choked her "dozens" of times.

During the trial, however, K.B. told a different story about what happened and recanted her prior statements. She testified that defendant woke up angry on the day of the incident and they began arguing. As she walked to the bathroom, she hit her eye on the door to the washer/dryer machine. She asked her children to go to their rooms and then showered to wash the blood off. When she got out of the shower, police officers were in her apartment. K.B. said she lied about defendant's abuse when she was interviewed on the day of the incident because she did not want to lose her children.

To impeach K.B.'s testimony, the prosecution offered recorded phone calls between her and defendant while he was awaiting trial in jail. In one of them, K.B. told defendant that she had told investigators that defendant hit her, choked her, pepper sprayed her, and threw the pepper spray canister at her. She told defendant that he should not have "put his hands on" her and that she thought he was "really going to hurt [her] this time."

A jury convicted defendant of possession of a firearm by a prohibited person (count 1; Pen. Code,[1] § 29800, subd. (a)(1)); possession of ammunition by a prohibited

---

[1] Unless otherwise indicated, all further references are to the Penal Code.

4

person (count 2; § 30305, subd. (a)); and possession of a pipe used for unlawfully smoking methamphetamine (count 3; § 11364).

In a separate trial, a jury convicted defendant of willful infliction of corporal injury on a cohabitant (domestic violence) (count 1; § 273.5, subd. (a)) and assault with a deadly weapon (count 2; § 245, subd. (a)(1)).  The jury acquitted him of intimidating a witness (count 3; § 136.1, subd. (b)(1)).

The trial court found true that defendant had been convicted of two prison priors: vehicle theft (Veh. Code, § 10851, subd. (a); § 667.5, subd. (b)) and discharging a firearm from a vehicle (§ 12034, subd. (d); § 667.5, subd. (b)).  The court also found that the latter conviction was a serious prior felony (§ 667, subd. (a)(1)).  The trial court sentenced defendant to 18 years, eight months in prison, which included two one-year enhancements for defendant's prison priors and one five-year enhancement serious felony prior enhancement.  The trial court also imposed $950 in fines and fees.

III.

DISCUSSION

Defendant raises four arguments:  (1) the trial court erroneously admitted testimony from a detective that constituted improper "profile evidence"; (2) the two one-year enhancements must be stricken under recently enacted legislation; (3) the case must be remanded so the trial court can decide whether to strike the five-year enhancement under recently enacted legislation; and (4) the case must be remanded so the trial court

5

can hold an ability-to-pay hearing before imposing fines and fees.  The People disagree with defendant's first contention but agree with the rest, as do we.

A. *Detective's Testimony*

Detective Christian Vaughan testified as an expert on domestic violence for the prosecution.  Detective Vaughan testified generally about domestic violence.  Among other things, he explained the "cycle" of domestic violence between partners and why domestic violence victims often recant after reporting abuse.

In doing so, Detective Vaughan testified about the "Power and Control Wheel," which describes the "traits and behaviors and characteristics of the perpetrators in their individual cases."  Detective Vaughan told the jury that the Power and Control Wheel was based on survey responses by 300 domestic violence victims about "traits and behaviors and characteristics of the perpetrators in their individual cases."

Using a graphic of the Power and Control Wheel as a demonstrative exhibit, Detective Vaughan explained that the wheel has eight typical traits and behaviors of abusers, including "'using coercion and threats,'" "'using intimidation,'" "'minimizing, denying and blaming,'" and "'using male privilege.'"  Detective Vaughan also testified that domestic abusers generally exhibit two "characteristics":  "one common characteristic [is] to treat women as a possession," and "another common characteristic [is] a lack of responsibility about their actions."

6

Defendant contends Detective Vaughan's testimony, particularly his testimony about the Power and Control Wheel, amounted to inadmissible "profile evidence." We disagree.[2]

"A profile is a collection of conduct and characteristics commonly displayed by those who commit a certain crime." (*People v. Robbie* (2001) 92 Cal.App.4th 1075, 1084 (*Robbie*).) "Profile evidence is generally inadmissible to prove guilt." (*Ibid*.) This is because it evidence invites the jury "to conclude that, because the defendant manifested some characteristics, he committed a crime" (*id*. at p. 1087.) by suggesting that "criminals act in a certain way; the defendant acted that way; therefore, the defendant is a criminal." (*Id*. at p. 1085.)

"'Profile evidence,' however, is not a separate ground for excluding evidence," and "is inadmissible only if it is either irrelevant, lacks a foundation, or is more prejudicial than probative." (*People v. Smith* (2005) 35 Cal.4th 334, 357, disapproved on other grounds by *People v. Beck and Cruz* (2019) 8 Cal.5th 548, 670.) In particular, profile evidence is inadmissible "'when it is insufficiently probative because the conduct or matter that fits the profile is as consistent with innocence as guilt.' [Citation.]" (*People v. Prince* (2007) 40 Cal.4th 1179, 1226.) We review the trial court's admission

---

[2] The People argue defendant forfeited the argument because he did not object to Detective Vaughan's testimony on this basis. We address the issue on the merits "to avert [defendant's] claim of inadequate assistance of counsel," and reject the claim. (*People v. Yarbrough* (2008) 169 Cal.App.4th 303, 310.)

of alleged profile evidence for an abuse of discretion. (*Robbie*, *supra*, 92 Cal.App.4th at p. 1084.)

The two cases defendant relies on, *Robbie*, *supra*, 92 Cal.App.4th 1075 and *People v. Martinez* (1992) 10 Cal.App.4th 1001 (*Martinez*), illustrate what improper profile evidence is and why it is inadmissible. They also show that Detective Vaughan's testimony was not inadmissible profile evidence.

In *Robbie*, the defendant was charged with kidnapping for sexual purposes, oral copulation, and penetration with a foreign object. (*Robbie*, *supra*, 92 Cal.App.4th at p. 1077.) The prosecution also presented expert testimony from a special agent on "'the behaviors and conduct of persons who commit sexual assaults.'" During the agent's testimony, the prosecutor asked her to consider various kinds of conduct by posing hypothetical questions, which matched the behavior the victim attributed to the defendant. The agent testified that the behavior she described through the hypotheticals—in other words, the defendant's alleged behavior—was "the most prevalent type of behavior pattern" by a sex offender. (*Id*. at pp. 1082-1083.) The *Robbie* court held the expert's testimony was inadmissible profile evidence because it suggested that the defendant was a rapist because he acted a certain way, even though his alleged behavior "was equally consistent with consensual activity." (*Id*. at p. 1083.)

In *Martinez*, the defendant was arrested while driving a stolen truck. (*Martinez*, *supra*, 10 Cal.App.4th at p. 1003.) The defendant was driving with a suspended license, the truck's license plates had been replaced, and the registration was forged. (*Ibid*.) The

8

defendant claimed he did not know the car was stolen when he bought it. (*Ibid.*) Two law enforcement experts on auto theft rings testified for the prosecution. They described how auto theft rings in the area operated matched the circumstances of the defendant's case, including the type of truck he drove, his route, and his claim that he did not know the truck was stolen. (*Id.* at pp. 1004-1006.) This court held that the experts' testimony was inadmissible profile evidence because "the clear thrust of the evidence was to establish that defendant 'fit' a certain 'profile.'" (*Id.* at p. 1006.) We reasoned that although the similarities between the defendant's conduct and how auto theft rings operate "may be a proper consideration for law enforcement in investigating criminal activity, they are inappropriate for consideration on the issue of guilt or innocence" because of "the potential of including innocent people as well as the guilty." (*Ibid.*)

Detective Vaughan's testimony was not improper profile evidence like the experts' testimony in *Robbie* and *Martinez*. Unlike the prosecutor in *Robbie*, the prosecutor here did not ask Detective Vaughan hypothetical questions about conduct that matched defendant's alleged conduct. And unlike the experts' testimony in *Martinez*, Detective Vaughan's testimony was not offered to prove that defendant fit a certain criminal profile. His testimony was limited to a general discussion of domestic abuse and its effects on victims. He never suggested that defendant fit the profile of an abuser. (See *People v. Prince*, *supra*, 40 Cal.4th at p. 1226 [explaining that "profile testimony" involves an expert comparing "the behavior of the defendant to the pattern or profile" and the expert concluding "the defendant fits the profile"].) And the prosecutor did not use

9

hypotheticals to elicit testimony from Detective Vaughan that suggested defendant's alleged behavior mirrored the behavior of an abused.

This background information was properly admitted given K.B.'s trial testimony that defendant did not abuse her, which conflicted with her statements to law enforcement and CPS that he repeatedly abused her, including on the day in question. (See *People v. Kovacich* (2011) 201 Cal.App.4th 863, 903 ["expert testimony on domestic violence may include general descriptions of abuser behavior in order to 'explain the victim's actions in light of the abusive conduct [citation]'"]; *People v. Gadlin* (2000) 78 Cal.App.4th 587, 594 [expert evidence about "recantation and reunion by a domestic abuse victim" was admissible even though victim did not recant and cooperated with police].) Indeed, using expert testimony to "explain that it is common for people who have been physically and mentally abused to act in ways that may be difficult for a layperson to understand" is authorized by Evidence Code section 1107. (*People v. Riggs* (2008) 44 Cal.4th 248, 293.) As defendant acknowledges, Detective Vaughan's testimony was offered "to dispel some of the myths surrounding domestic violence, information about the cycle of domestic violence, and information about why victims of domestic violence often recant." He also acknowledges that the prosecution used Detective Vaughan's testimony to argue that the fact that he "fit the profile showed that K.B. was an abusive relationship and that existence of that relationship explained some of her behavior."

Our Supreme Court approved the admission of expert testimony similar to Detective Vaughan's in *People v. Brown* (2004) 33 Cal.4th 892 (*Brown*). The court

explained that expert testimony about abusive relationships is relevant to explain why a domestic violence victim may recant an accusation or minimize the abuse. (*Id.* at p. 906.) An expert thus properly testified about the "'cycle of violence' in an abusive domestic relationship," including how "[m]ost abusive relationships begin with a struggle for power and control between the abuser and the victim that later escalates to physical abuse," "[t]he initial 'tension building stage' of the cycle can appear in deceptively mundane ways, such as complaints about the cleanliness of the house," "[o]ften the abuser uses psychological, emotional, or verbal abuse to control the victim," "[w]hen the victim tries to leave or to assert control over the situation, the abuser may turn to violence as an attempt to maintain control," and that "the victim may change her mind about prosecuting the abuser and may recant her previous statements." (*Id.* at p. 907.) The testimony was admissible because there was evidence suggesting that the defendant and the victim were in a "'cycle of violence'" that included emotional, psychological, and physical abuse usually present in abusive domestic relationships. (*Ibid.*; see also *People v. Humphrey* (1996) 13 Cal.4th 1073, 1087 [evidence about battered Woman's syndrome relevant and admissible to help "'dispell[] many of the commonly held misconceptions about battered women'"].)

Detective Vaughan's testimony was largely substantively similar to the expert testimony permissibly admitted in *Brown*. Like the expert in *Brown*, Detective Vaughan testified about the "cycle" of abusive relationships and how they develop, the psychological and physical tactics abusers use to control their victims, and how victims

often recant. And just as the expert's testimony in *Brown* was properly admitted to assess the victim's credibility and recantation, Detective Vaughan's testimony was properly admitted for the jury to evaluate K.B.'s credibility and conflicting statements about defendant's abuse. We therefore conclude the trial court did not abuse its discretion by admitting Detective Vaughan's testimony. (Cf. *In re I.B.* (2020) 53 Cal.App.5th 133, 156 ["[C]ourts are very familiar with experts testifying in criminal cases about the 'Power and Control Wheel,' and the 'Cycle of Violence,' . . . ."]) As a result, we reject defendant's claim that his counsel was ineffective for failing to object to Detective Vaughan's testimony as inadmissible profile evidence.[3]

Defendant suggests Detective Vaughan's testimony "crossed the line" in part because he used a "powerful graphic" of the Power and Control Wheel. We disagree. We discern no material difference between Detective Vaughan's testifying about the wheel and using a graphic of it and testifying without it. The graphic was simply a prop that helped explain his otherwise admissible testimony.

Even if the trial court erroneously admitted Detective Vaughan's testimony, any error was harmless. "[R]eversal is required only if it is reasonably probable the defendant would have obtained a more favorable result had the evidence been excluded."

---

[3] Defendant also argues in passing that the prosecutor improperly relied on Detective Vaughan's testimony. Because he did not object to the prosecutor's arguments and has not sufficiently briefed the issue, we find it forfeited. (See *People v. Hajek and Vo* (2014) 58 Cal.4th 1144, 1239; *In re A.C.* (2017) 13 Cal.App.5th 661, 672.) For the same reasons, we reject defendant's cursory argument that the trial court improperly admitted K.B.'s phone calls with defendant.

(*People v. Carrillo* (2004) 119 Cal.App.4th 94, 103.)

It is not reasonably probable defendant would have received a better outcome had Detective Vaughan's testimony been excluded. The evidence that defendant was guilty of count 1 (domestic violence) and count 2 (assault with a deadly weapon) was overwhelming. The jury heard evidence of K.B.'s daughter's 911 call in which she said defendant was "throwing" K.B. and pepper spraying her. The jury saw photographs of K.B.'s injuries taken later that day, and also heard evidence of the statements she and her two children gave law enforcement shortly after defendant's abuse. Finally, the jury heard a recorded jail call during which defendant effectively admitted to having abused K.B., including by pepper spraying her, and tried to coach her on what to say going forward. Given the strength of this evidence proving defendant's guilt on counts 1 and 2, any error in admitting Detective Vaughan's testimony was harmless.

B. *Remand*

Defendant asserts that, following the enactment of Senate Bill No. 136, the two one-year prior prison term enhancements must be stricken because his prior prison term convictions no longer qualify as predicate offenses for the imposition of enhancements under section 667.5, subdivision (b). Defendant also contends that the case must be remanded for resentencing under Senate Bill No. 567 and Assembly Bill No. 124. The People agree with defendant's contentions, as do we.

While this appeal was pending, the Governor signed Senate Bill No. 136 (2019-2020 Reg. Sess.) (Stats 2019, ch. 590, § 1), effective January 1, 2020. At the time of

13

defendant's sentencing, former section 667.5, subdivision (b), required trial courts to impose a one-year sentence enhancement for each true finding on an allegation that the defendant had served a separate prior prison term unless the defendant had remained free of both felony convictions and prison or jail custody during a period of five years since the subject prior prison term. Following the enactment of Senate Bill No. 136, only prior prison terms for sexually violent offenses, as defined in Welfare and Institutions Code section 6600, subdivision (b), are subject to the one-year enhancement under Penal Code section 667.5, subdivision (b). (Stats 2019, ch. 590, § 1.) Defendant's two prior prison terms were not for "a sexually violent offense as defined in subdivision (b) of [s]ection 6600 of the Welfare and Institutions Code." (Stats 2019, ch. 590, § 1.) We therefore remand the matter to the trial court with instructions to strike the two one-year prior prison enhancements.

Defendant argues, and the People agree, that the trial court should be allowed to exercise its discretion to strike the remaining five-year enhancement imposed under section 667, subdivision (a)(1), in light of Senate Bill No. 1393. We agree.

At the time of sentencing, the trial court was precluded by law from striking a prior serious felony conviction. (See former § 1385, subd. (b) ["This section does not authorize a judge to strike any prior conviction of a serious felony for purposes of enhancement of a sentence under [s]ection 667"]; see also § 667, subd. (a) [person with prior serious felony conviction "shall receive . . . a five-year enhancement"].)

14

However, effective January 1, 2019, sections 667, subdivision (a), and 1385, subdivision (b), allow a trial court to exercise its discretion to strike or dismiss a prior serious felony conviction for sentencing purposes. (*People v. Garcia* (2018) 28 Cal.App.5th 961, 971.) The trial court therefore is no longer prohibited from striking prior serious felony convictions during sentencing. Although defendant was sentenced before the effective date of Senate Bill No. 1393, we agree that the amendment applies to defendant because his case is not final. (*Id*. at pp. 972-973 [Senate Bill No. 1393 applies retroactively to all cases not yet final on the effective date], citing *People v. Superior Court* (*Lara*) (2018) 4 Cal.5th 299, 307-308, fn. 5 & *In re Estrada* (1965) 63 Cal.2d 740, 744-745; see *People v. Jones* (2019) 32 Cal.App.5th 267, 272 ["When it enacted Senate Bill [No.] 1393, the Legislature did not indicate it intended the legislation to apply prospectively only."].)

The record contains no clear indication that the trial court would not have struck the five-year enhancement for the prior serious felony conviction if it had the discretion to do so. Instead, the trial court found that the enhancement was mandatory under then-existing law. We therefore remand the matter to the trial court for it to exercise its discretion under sections 1385, and 667, subdivision (a), to determine whether to strike the remaining prior serious felony enhancement. We express no opinion on how the trial court should exercise its discretion on remand.

Defendant contends and the People concede that the matter also must be remanded for resentencing under Senate Bill No. 567 and Assembly Bill No. 124. We agree.

15

Effective January 1, 2022, those pieces of legislation amended section 1170 in two relevant respects.  (See Sen. Bill No. 567 (2021-2022 Reg. Sess.); Stats. 2021, ch. 731, § 1.3; Assem. Bill No. 124 (2021-2022 Reg. Sess.); Stats. 2021, ch. 695, § 5.)

First, under amended section 1170, subdivision (b), a court must "order imposition of a sentence not to exceed the middle term," except under narrow circumstances. (§ 1170, subd. (b)(1).)  An upper term may be imposed "only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial."  (§ 1170, subd. (b)(2).) Nevertheless, "the court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury."  (§ 1170, subd. (b)(3).)

Here, defendant was sentenced to the upper term for his convictions on counts 1 and 2.  Defendant contends, and the People concede, that Senate Bill No. 567 applies retroactively to this case and that the matter should be remanded for resentencing under current section 1170, subdivision (b).  We agree.  (See *People v. Flores* (2022) 73 Cal.App.5th 1032, 1038-1039 [remanding for resentencing under section 1170 as amended by Senate Bill No. 567].)  We accordingly vacate the sentence and remand for resentencing under amended section 1170, subdivision (b).

16

Defendant also argues, and the People concede, that the matter should be remanded under recently enacted Assembly Bill No. 124. We agree.

Assembly Bill No. 124 amended section 1170, subdivision (b)(6) to provide that "unless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if" the defendant "has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence." (§ 1170, subd. (b)(6)(A).) We agree with the parties that this amendment applies retroactively to defendant's case. (See *People v. Flores*, *supra*, 73 Cal.App.5th at pp. 1038-1039.) We therefore agree with the parties that the matter must be remanded so that defendant can present evidence of trauma he suffered at a resentencing hearing.

Finally, defendant argues the trial court erred in imposing fines and fees without holding a hearing on whether he can pay them. He argues, and the People agree, that we should remand the case so that he can request an ability-to-pay hearing and argue that the trial court should not impose the fines and fees because they are unconstitutionally excessive and he cannot pay them. We agree. We therefore remand the matter to allow defendant to request an ability-to-hearing and/or argue that the trial court may not impose fines and fees that he has no ability to pay and that they are unconstitutionally excessive.

IV.

DISPOSITION

The judgments of conviction are affirmed, the sentence is vacated, and the matter is remanded for resentencing.  On remand, the trial court shall strike the two one-year enhancements for defendant's prison priors, shall decide whether to strike the five-year serious felony enhancement, and shall resentence defendant under amended section 1170, subdivision (b).  Before imposing fines and fees, the trial court shall allow defendant to request an ability-to-pay hearing and/or argue that the court should not impose any fines or fees that he cannot pay and that they are unconstitutionally excessive.  After the trial court has resentenced defendant, the clerk of the superior court is directed to prepare amended abstracts of judgment and to forward a certified copy of each amended abstract to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

RAMIREZ
P. J.

FIELDS
J.

18